**WALSH v. ARCHER.**

No. 7518.

Circuit Court of Appeals, Ninth Circuit.

Oct. 22, 1934.

Loyd L. Lavender, of Long Beach, Cal., for appellant.

J. Charles Dennis, U. S. Atty., of Seattle, Wash., Owen P. Hughes, Asst. U. S. Atty., of Tacoma, Wash., and Peirson M. Hall, U. S. Atty., and Ernest R. Utley, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal from an order of the United States District Court for the Western District of Washington dismissing appellant's petition for a writ of habeas corpus. The petition discloses that on November 10, 1933, appellant was convicted of murder in the first degree, following indictment and trial in the United States District Court for the Southern District of California, hereinafter referred to as the trial court, and was imprisoned for life and is now in the custody of appellee serving said sentence. The murder was alleged to have been committed on the high seas, on board the vessel Johanna Smith II, and within the jurisdiction of the United States District Court for the Southern District of California.

Sections 272 and 273 of the Criminal Code (18 USCA §§ 451, 452) provide:

"Section 451. (Criminal Code, section 272.) *Places and Waters Applicable; on Board American Vessel on High Seas or Great Lakes; on Land Under Exclusive Control of United States; Guano Islands.* The crimes and offenses defined in this chapter shall be punished as herein prescribed:

"First. When committed upon the high seas, or on any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, or when committed within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State on board any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, or District thereof. * * *

"§ 452. (Criminal Code, section 273.) *Murder; First Degree; Second Degree.*

"Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than

him who is killed, is murder in the first degree. Any other murder is murder in the second degree. * * * "

The petition for habeas corpus is based on the ground that at the time of the commission of the crime for which petitioner was convicted, the said vessel, Johanna Smith II, was within the state of California and within the jurisdiction of the courts of the state of California, and not within the jurisdiction of the United States District Court for the Southern District of California.

The petition alleges "that on the date of the commission of the homicide for which your petitioner stands convicted of and imprisoned for murder, to-wit, on or about the said 20th day of September, 1933, the said vessel was located and situated on and upon the waters of San Pedro Bay, State of California, three and nine-tenths (3.9) nautical miles from the nearest point of land of the coast of the State of California, to-wit, the White Stack site in the City of Seal Beach, State of California; that the seaward boundary of the said San Pedro Bay is a line drawn from Point Firmin to Point Lasuen (the Western limit of the present City of Huntington Beach, State of California); that all waters shoreward from the said line drawn from the said Point Firmin to the said Point Lasuen, and all waters seaward from the said Point Lasuen, and all waters seaward from the said line for a distance of three (3) miles therefrom, are a part of and within the jurisdiction of the State of California, and are not a part of the high seas; that on the said date of the said commission of the said homicide the said vessel was located and situated shoreward from the said line from the said Point Firmin to the said Point Lasuen, and therefore within the State of California and not upon the high seas, and not within the jurisdiction of the District Court of the United States for the Southern District of California, or any other District Court of the United States, or any Federal Court whatsoever;" and that testimony was taken at the trial relating to the position of the vessel at the time the homicide was committed.

Attached to the petition are excerpts from the court's instructions to the jury, in which the court stated:

"It is the province of the Jury to determine whether or not the crime charged in this case was committed on the high seas or within the jurisdiction of the State of California. If you find this crime to have been committed within the State of Califor-

nia then this Court has no jurisdiction and you should so find.

"If you find the crime was committed on the high seas then you will consider the case on its merits and the other instructions submitted to you.

"There is no evidence before you except that given by the Government as to the location of the Johanna Smith II on September 20, 1933, the date the crime is alleged to have been committed.

"Therefore, the only question for you to determine in this regard is whether or not the evidence shows the Johanna Smith II to have been situated in the Pacific Ocean beyond the boundary of the State of California.

"The determination of the boundaries of the State of California is a matter for the court and I will now instruct you as to where you are to consider those boundaries. The Constitution of the State of California provides that the boundary of the said state on the Pacific Ocean shall extend three English miles into the Pacific Ocean, paralleling the coast.

"For the purpose of making the description of this boundary more understandable I will define and describe the coast line for you, and you shall then consider the boundary line of the State of California as extending three English miles beyond said coast line into the Pacific Ocean. The coast line where there is no bay means the shoreline. Where a bay indents the coast line, the coast line is considered to extend from headland to headland of said bay, leaving the jurisdiction of the state three miles beyond a line drawn between such two headlands. In the present case a peculiar situation arises in that the indentation at San Pedro is not describable as an ordinary bay, in that only one headland exists. However, the bay has been referred to as such and recognized as such for some time, and in fact is now used as a refuge for shipping.

"Due to the fact that there is only one headland, I hereby instruct you that you shall consider the bay as extending from Point Firmin in a straight line to a point on the south and easterly shore line, which would be six nautical miles distance from Point Firmin. The evidence tends to prove that this line will strike the shoreline a little south of the place where the Long Beach Breakwater joins the shore and come slightly inside the extremities of the Long Beach and San Pedro Breakwater.

"Thus, for the purpose of this case, you shall consider the coast line as extending from the west along the shoreline to Point Firmin and easterly in a straight line from Point Firmin to a point slightly south of the base of the Long Beach Breakwater and continuing along the shoreline.

"Then you must remember that the jurisdiction of the State of California extends three English miles into the Pacific Ocean beyond this coastline as described to you hereinbefore.

"Therefore, if you find that the Johanna Smith II was situated more than three English miles in the Pacific Ocean from the coastline as described to you, then you shall find that it was on the high seas, and consider the evidence in the case as being within the jurisdiction of this court.

"A Federal Judge is allowed the privilege of commenting upon the facts in a case, and I might say in commenting on the facts as to the jurisdictional question, there seems no dispute that the Johanna Smith II on September 20, 1933, was situated more than three English miles beyond the coast line as I have been describing it to you and outside of the jurisdiction of the State, at the time of the alleged crime, and therefore within the jurisdiction of this Court.

"In addition to the finding of the boat being on the high seas, it is also necessary to find that the boat, the Johanna Smith II, belonged in whole or in part on the date of the alleged offense to a citizen of the United States.

"In the present case one of the witnesses testified for the government that he was a part owner of the Johanna Smith II and that he was a citizen of the United States. There is no dispute of this evidence and it is sufficient for you to find that the boat was in the jurisdiction of this Court."

Appellant admits "that a writ of habeas corpus cannot be used in the place of an appeal or writ of error to correct errors of the trial court," but "contends that a writ of habeas corpus is permissible and is the proper method to determine whether or not the trial court acted without or beyond its jurisdiction."

It is further contended that "to determine the facts of the jurisdiction of the trial court will require the knowledge of geographical facts, to-wit: the extent of San Pedro Bay, California, the coast line of California at San Pedro Bay, and the location of the city of Seal Beach, California, at which said city of Seal Beach the said Seal Beach Stack is located; that the court takes judicial knowledge of geographical facts and locations; that a bay is a body of water around which the land forms a curve, and by reference to any map it will be found that San Pedro Bay meets this definition of a bay; and that every bay along the shore of California is a part of California and within the jurisdiction of California."

Under the circumstances, we are of the opinion that we are without authority to set aside the judgment of the trial court. As said by the Supreme Court in the case of Rodman v. Pothier, 264 U. S. 399, 402, 44 S. Ct. 360, 361, 68 L. Ed. 759:

"We think there was enough to show probable cause and that the judgment of the District Court is correct. Whether the locus of the alleged crime was within the exclusive jurisdiction of the United States demands consideration of many facts and seriously controverted questions of law. As heretofore often pointed out, these matters must be determined by the court where the indictment was found. The regular course may not be anticipated by alleging want of jurisdiction and demanding a ruling thereon in a habeas corpus proceeding. Barring certain exceptional cases (unlike the present one), this court—'has uniformly held that the hearing on habeas corpus is not in the nature of a writ of error, nor is it intended as a substitute for the functions of the trial court. Manifestly, this is true as to disputed questions of fact, and it is equally so as to disputed matters of law, whether they relate to the sufficiency of the indictment or the validity of the statute on which the charge is based. These and all other controverted matters of law and fact are for the determination of the trial court.' [Cases cited.]"

Although this language was used by the court in a removal case, it is apposite here. Whether the location of the alleged crime was upon the high seas and exclusively within the jurisdiction of the United States required consideration of many facts and seriously controverted questions of law, including the alleged error involving the jurisdiction of the court.

If petitioner's contention be true, then every person serving a sentence for an offense alleged to have been committed on the high seas, within the limits of an Indian reservation, national forest, or elsewhere upon lands exclusively within the jurisdiction of the United States, could claim the right to a hearing on habeas corpus by alleging in his petition that the trial court was without jurisdiction, thus retrying on habeas corpus

one of the issues of fact required in every such case to be passed upon by the trial court and the jury. See Louie v. United States, 254 U. S. 548, 550, 41 S. Ct. 188, 65 L. Ed. 399.

In his brief, petitioner complains of part of the trial court's instructions, set out above, relative to the ocean boundary of San Pedro Bay, and argues that, "in using this arbitrary distance of six miles for the coast line, the trial court committed error." This error, if error it was, did not render the judgment void, but was, at the most, one which could have been corrected on appeal. This is likewise true of any other alleged error. The court had jurisdiction of the petitioner, and, by virtue of the statute, of the crime of murder committed on the high seas, as charged in the indictment. Whether the locus of the crime charged was within the jurisdiction of the trial court was a matter for the determination of the court and the jury. We have no authority to review that determination on habeas corpus.

In the case of United States v. Lair, 195 F. 47, 50, the Circuit Court of Appeals for the Eighth Circuit had before it an appeal by the United States from an order of the District Court for the District of Kansas (177 F. 789) in an habeas corpus proceeding discharging petitioner Lair and declaring the judgment against him to be void, "for the reasons that the court did not have jurisdiction over the subject-matter, and that that part of the statute on which the indictment was predicated is void, being in contravention of the Constitution of the United States." The appellate court, considering the jurisdictional question, said:

"But, should it be conceded that the District Court in Illinois erroneously determined that the offense was committed within that district, its judgment is not void. It is said in the brief of counsel for defendant that the question of the jurisdiction of the District Court in Illinois was raised for the first time in this proceeding; and that the writ of habeas corpus is the only way that the validity of the defendant's conviction can now be determined. But why was that question not raised in the District Court in Illinois, if the offense was not there committed? That court had as full and complete jurisdiction to determine that question as did the court to which he applied; and, if it determined the question erroneously, its error could have been corrected in the usual way upon writ of error. But whether the question was raised in the District Court in Illinois or not is wholly immaterial, for the writ of habeas corpus cannot be made to serve as a writ of error, and will only be granted to discharge one whose conviction is void. Ex parte Parks, 93 U. S. 18, 23 L. Ed. 787; In re Lennon, 166 U. S. 548, 17 S. Ct. 658, 41 L. Ed. 1110; Horner v. United States, 143 U. S. 207, 12 S. Ct. 407, 36 L. Ed. 126; Toy Toy v. Hopkins, 212 U. S. 542, 29 S. Ct. 416, 53 L. Ed. 644; Harlan v. McGourin, 218 U. S. 442–445, 31 S. Ct. 44, 54 L. Ed. 1101, 21 Ann. Cas. 849." See, also, Ex parte Columbia George (C. C. Wash.) 144 F. 985.

The order appealed from is affirmed.