**BOWEN v. JOHNSON.**

No. 8753.

Circuit Court of Appeals, Ninth Circuit.

June 27, 1938.

Hugh Allen Bowen, in pro. per.

Frank J. Hennessy, U. S. Atty., and R. B. McMillan and A. J. Zirpoli, Asst. U. S. Attys., all of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from an order of the United States District Court for the Northern District of California denying appellant a writ of habeas corpus.

The facts are not in dispute. Appellant is confined in the United States prison at Alcatraz Island, California, under restraint of defendant, the prison warden. He was indicted December 14, 1930; convicted of murder under the provisions of § 273 of the Penal Code of the United States, 18 U.S.C.A. § 452; sentenced to life imprisonment by the United States District Court of Georgia for the Northern Division; and transferred from an eastern prison to Alcatraz by order of the Attorney General.

The indictment, upon which appellant was tried and convicted, charged him, together with John E. Smith and Frank Bowen, with shooting one Raymond Kington to death with a shot gun within the Rome Division of the Northern District of Georgia "within the jurisdiction of said court, and within a certain place and on certain lands reserved and acquired for the exclusive use of the United States and under exclusive jurisdiction thereof, and acquired by the United States by consent of the legislature of the State of Georgia, to-wit: Chickamauga and Chattanooga National Park, sometimes known as Chickamauga and Chattanooga National Military Park, in said State of Georgia * * *."

Appellant's principal claim is that the District Court in which he was tried had no jurisdiction over the Park in which it is alleged the crime was committed for the reason that jurisdiction over such area could not constitutionally have been ceded to the United States and in fact was not so ceded, and that the indictment is defective in not alleging the details of such cession to the United States by the State of Georgia.

In Archer v. Heath, 9 Cir., 1929, 30 F.2d 932, the court said:

"Where a judgment of a United States court is attacked directly by appeal, the judgment will be reversed, unless the jurisdictional facts appear some place in the record; but on a collateral attack, such as by habeas corpus, the judgment is presumptively valid, unless it appears affirmatively from the record that the court was without jurisdiction. This distinction has been repeatedly recognized by the Supreme Court, and it has been universally held that a petitioner is not entitled to a discharge on habeas corpus simply because the record of conviction fails to show affirmatively the jurisdiction of the court in which the conviction was had. Ex parte Cuddy, 131 U.S. 280, 9 S.Ct. 703, 33 L.Ed. 154; United States v. Pridgeon, 153 U.S. 48, 14 S.Ct. 746, 38 L.Ed. 631; Knewel v. Egan, 268 U.S. 442, 45 S.Ct. 522, 69 L.Ed. 1036." (Page 933.)

In Walsh v. Archer, 9 Cir., 1934, 73 F.2d 197, an habeas corpus proceeding, the petitioner contended that the alleged murder was not committed on the high seas on board a vessel but rather within the State of California and within the jurisdiction of the courts of that State. This court said:

"Whether the location of the alleged crime was upon the high seas and exclusively within the jurisdiction of the United States required consideration of many facts and seriously controverted questions of law, including the alleged error involving the jurisdiction of the court.

"If petitioner's contention be true, then every person serving a sentence for an offense alleged to have been committed on the high seas, within the limits of an Indian reservation, national forest, or elsewhere upon lands exclusively within the jurisdiction of the United States, could claim the right to a hearing on habeas corpus by alleging in his petition that the trial court was without jurisdiction, thus retrying on habeas corpus one of the issues of fact required in every such case to be passed upon by the trial court and the jury. * * *" (Page 199.)

In that case the court decided that, where the lack of jurisdiction does not appear affirmatively on the face of the record, such matters of law and fact are for the determination of the trial court and cannot be questioned on habeas corpus.

The indictment, in the case before us, recites that the jurisdiction of the United States over appellant is predicated upon the fact that the alleged crime was committed "within a certain place and on certain lands reserved and acquired for the exclusive use of the United States and under exclusive jurisdiction thereof, and acquired by the United States by consent of the legislature of the State of Georgia, to-wit: Chickamauga and Chattanooga National Park * * *." The question then arises, "Does the record affirmatively show that the United States was without jurisdiction?" Had the indictment gone no further than the phrase "and acquired by the United States by the consent of the legislature of the State of Georgia" and not added the words "to-wit: Chickamauga and Chattanooga National Park * * *," the question would undoubtedly have to be answered in the negative. It is argued that the addition of the latter phrase rendered the indictment fatally defective—it being asserted that the United States has no jurisdiction over the Chickamauga and Chattanooga National Park. But if the United States could constitutionally acquire jurisdiction over the Park, then the question whether in fact the United States did have such jurisdiction over the Park and over the appellant becomes a seriously controverted question of law and fact within the meaning of Walsh v. Archer, supra, and it is not within our province to question this on habeas corpus. The record in this case does not disclose a lack of jurisdiction in the United States unless it can be said that the United States is without power to exercise jurisdiction over a national park because lacking constitutional power to accept a cession thereof, with, of course, all of its incidents.

The recent case of Collins v. Yosemite Park & Curry Co., 58 S.Ct. 1009, 82 L.Ed. ——, decided by the Supreme Court May 31, 1938, removes all doubt as to this problem. In that case the parties contested the validity of a cession of exclusive jurisdiction by the State of California to the United States over Yosemite National Park (reserving to the State certain powers to serve process and to tax). In answering the contention that the United States could not constitutionally accept such cession, the court said:

"There is no question about the power of the United States to exercise jurisdic-

tion secured by cession, though this is not provided for by clause 17. [Of Art. 1, § 8 of the Federal Constitution, U.S.C.A. Const. Art. 1, § 8, cl. 17.] [Citing cases.] It has never been necessary, heretofore, for this Court to determine whether or not the United States has the constitutional right to exercise jurisdiction over territory, within the geographical limits of a State, acquired for purposes other than those specified in Clause 17. It was raised but not decided in Arlington Hotel Co. v. Fant, 278 U.S. 439, 454, 49 S.Ct. 227, 73 L.Ed. 447. It was assumed without discussion in Yellowstone Park Transportation Co. v. Gallatin County, 9 Cir., 31 F.2d 644.

"* * * It is necessary to determine that question here. The United States has large bodies of public lands. These properties are used for forests, parks, ranges, wild life sanctuaries, flood control, and other purposes which are not covered by Clause 17. * * * No question is raised as to the authority to acquire land or provide for national parks. As the national government may, 'by virtue of its sovereignty' acquire lands within the borders of states by eminent domain and without their consent [citing James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L. Ed. ——, 114 A.L.R. 318 and Kohl v. United States, 91 U.S. 367, 371, 372, 23 L.Ed. 449], the respective sovereignties should be in a position to adjust their jurisdictions. There is no constitutional objection to such an adjustment of rights. * * *" (Page 1014.)

Upon the authority of the foregoing, the question whether or not the United States could have had jurisdiction over the Chickamauga and Chattanooga National Military Park and over the appellant must be answered in the affirmative.

■ It is also contended that the indictment is defective in not describing with particularity the place of commission of the crime. We do not so hold, but even if it is such a question cannot be raised on habeas corpus. In Campbell v. Aderhold, 5 Cir., 1933, 67 F.2d 246, the court said:

"We think the indictment fairly and naturally read does fail to charge the place of the crime and would have been bad on demurrer and probably on motion in arrest of judgment. In all such proceedings taken before the judgment becomes final, it is the duty of the court to scrutinize its record to be sure that it serves its purposes to in-

form the defendant fully of the charge against him, to confine the trial to that charge, and to identify it as a protection against future double jeopardy. But when the defendant suffers a doubtful record to become final he may not freely criticize it in an indirect attack upon it. He is ordinarily conclusively bound by it on habeas corpus and may not contradict what it expressly asserts. Riddle v. Dyche, Warden, 262 U.S. 333, 43 S.Ct. 555, 67 L.Ed. 1009." (Page 246.)

This is a complete answer to appellant's contention.

■ Appellant also argues that the indictment does not charge that he committed a crime against the United States. The principal argument upon this point is that as three persons were charged, all three could not be guilty of murdering one man with one shot gun. The case of St. Clair v. United States, 1894, 154 U.S. 134, 14 S.Ct. 1002, 38 L.Ed. 936, disposes of this claim. In that case the Supreme Court, in answering a like contention, said:

"Equally without merit is the objection that the indictment does not show which one or more of the defendants committed the alleged assault. The indictment charged that the defendants, St. Clair, Sparf, and Hansen, acting jointly, killed and murdered Fitzgerald. The offense was one which, in its nature, might be committed by one or more of the defendants. Proof of the guilt of either one would have authorized his conviction, and the acquittal of the others." (Page 1007 of 14 S.Ct.)

■ That the word "felony" or "feloniously" was not used in the charging part of the indictment avails the appellant nothing. In Myres v. United States, 5 Cir., 1919, 256 F. 779, the court said (page 782):

"The plaintiff in error lastly criticizes the indictment because it does not charge that the offense was feloniously committed. The crime of murder under the federal law is defined by statute to be 'the unlawful killing of a human being with malice aforethought.' In defining murder in the first and second degree, and also manslaughter, the Penal Code does not make use of the word 'feloniously.' The offense being created and defined by statute, and the statute not using the word 'feloniously' in defining the crime, the indictment need not charge that it was done feloniously."

The other objections urged by the appellant are wholly insufficient in point of law and call for no discussion.

The order of the District Court is affirmed.