## BOWEN v. JOHNSTON, WARDEN.

No. 359. Argued January 11, 1939.—Decided January 30, 1939.

*Mr. Seth W. Richardson* argued the cause, and *Mr. Hugh Allen Bowen* was on a brief, for petitioner.

*Mr. Bates Booth,* with whom *Solicitor General Jackson, Assistant Attorney General McMahon,* and *Messrs. William W. Barron, Edward J. Ennis*, and *George F. Kneip* were on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Petitioner was convicted, in 1933, in the District Court of the Northern District of Georgia, of murder committed in 1930 on the Government Reservation known as the Chickamauga and Chattanooga National Park within the exterior limits of the State of Georgia. He was sentenced to imprisonment for life and is confined in the prison at Alcatraz, California.

In 1937, he presented a petition for a writ of *habeas corpus* to the District Judge of the Northern District of California alleging that the indictment was void, and no legal judgment could be based thereon, as it failed to show jurisdiction over the person and subject matter; that the United States did not have exclusive jurisdiction over the Park.[1] He also alleged that on his trial the court did not have the evidence taken down and preserved so that he might appeal, and that, upon this ground and others, he had been deprived of his liberty without due process of law. A copy of the indictment was annexed to the petition. Pursuant to an order to show cause, the Warden made return showing the judgment and the record of commitment. On the return day there was no appearance of petitioner's attorneys, and no evidence, apart from the return and the attached exhibits, was offered. The petition was submitted and later was de-

---

[1] Criminal Code, § 272, Third; 18 U. S. C. 451.

nied without opinion. On appeal, the order was affirmed. 97 F. 2d 860.

The principal contention before the Circuit Court of Appeals was that the United States did not have exclusive jurisdiction over the Park and hence that the District Court in Georgia did not have jurisdiction to try the petitioner. The court, taking the view that the United States could constitutionally acquire jurisdiction over the Park (*Collins* v. *Yosemite Park Co.,* 304 U. S. 518), held that the question whether the United States did acquire such jurisdiction could not be raised on *habeas corpus.* In view of the importance of the question thus presented, we granted certiorari. 305 U. S. 579.

*First.* Jurisdiction is conferred upon the District Courts "of all crimes and offenses cognizable under the authority of the United States." Jud. Code, § 24; 28 U. S. C. 41 (2).

Crimes are thus cognizable—

"When committed within or on any lands reserved or acquired for the exclusive use of the United States, and under the exclusive jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building." Crim. Code, § 272; 18 U. S. C. 451, Third.

The last clause covers cases where exclusive jurisdiction is acquired by the United States pursuant to Article I, § 8, paragraph 17, of the Constitution.

In the instant case, no question of fact was presented with respect to the place where the crime was committed. The indictment specified the place, that is,—

"a certain place and on certain lands reserved and acquired for the exclusive use of the United States and under exclusive jurisdiction thereof, and acquired by the United States by consent of the Legislature of the State

of Georgia, to wit: Chickamauga and Chattanooga National Park, sometimes known as Chickamauga and Chattanooga National Military Park, in said State of Georgia."

The sole question was whether this Park was within the exclusive jurisdiction of the United States. There is no question that the United States had the constitutional power to acquire the territory for the purpose of a national park and that it did acquire it. Whether or not the National Government acquired exclusive jurisdiction over the lands within the Park or the State reserved, as it could, jurisdiction over the crimes there committed, depended upon the terms of the consent or cession given by the legislature of Georgia. *Collins* v. *Yosemite Park Co., supra,* pp. 529, 530. See, also, *James* v. *Dravo Contracting Co.,* 302 U. S. 134, 146–148. The federal courts take judicial notice of the Georgia statutes. *Owings* v. *Hull,* 9 Pet. 607; *Lamar* v. *Micou,* 114 U. S. 218, 223. If these statutes did not give to the United States exclusive jurisdiction over the Park, the indictment did not charge a crime cognizable under the authority of the United States.

*Second.* Where the District Court has jurisdiction of the person and the subject matter in a criminal prosecution, the writ of *habeas corpus* cannot be used as a writ of error. The judgment of conviction is not subject to collateral attack. *Ex parte Watkins,* 3 Pet. 193, 203; *Ex parte Parks,* 93 U. S. 18, 23; *Harlan* v. *McGourin,* 218 U. S. 442, 448; *McMicking* v. *Schields,* 238 U. S. 99, 107; *Riddle* v. *Dyche,* 262 U. S. 333, 335; *Craig* v. *Hecht,* 263 U. S. 255, 277. The scope of review on *habeas corpus* is limited to the examination of the jurisdiction of the court whose judgment of conviction is challenged. *Ex parte Siebold,* 100 U. S. 371, 375; *Ex parte Bigelow,* 113 U. S. 328, 331; *Matter of Gregory,* 219 U. S. 210, 213; *Glasgow* v. *Moyer,* 225 U. S. 420, 429; *Knewel* v. *Egan,*

268 U. S. 442, 445. But if it be found that the court had no jurisdiction to try the petitioner, or that in its proceedings his constitutional rights have been denied, the remedy of *habeas corpus* is available. *Ex parte Lange,* 18 Wall. 163, 178; *Ex parte Crow Dog,* 109 U. S. 556, 572; *In re Snow,* 120 U. S. 274, 285; *In re Coy,* 127 U. S. 731, 758; *Hans Nielsen, Petitioner,* 131 U. S. 176, 182; *In re Bonner,* 151 U. S. 242, 257; *Moore* v. *Dempsey,* 261 U. S. 86, 91; *Johnson* v. *Zerbst,* 304 U. S. 458, 467.

In applying this principle, we have said that the court "has jurisdiction to render a particular judgment only when the offence charged is within the class of offences placed by the law under its jurisdiction." *In re Bonner, supra.* As it is the duty of the District Court, when the prosecution is brought before it, to examine the charge and ascertain whether the offense is of that class, the District Court is thus empowered to pass upon its own jurisdiction. This, under the applicable statute, may require consideration of the place where the offense is alleged to have been committed. The answer to that question may require the examination and determination of questions of fact and law and that determination may be the appropriate subject of appellate review. Thus if, construing a statute, a question of law is determined against the Government on demurrer to the indictment, the case may fall within the provisions of the Criminal Appeals Act. *United States* v. *Sutton,* 215 U. S. 291; *United States* v. *Soldana,* 246 U. S. 530. Or, if decided against the accused, the question may be reviewed by the Circuit Court of Appeals on appeal from the judgment of conviction. In considering the distribution of appellate jurisdiction under the former statute [2] permitting a direct writ of error from this Court to the District Court, when the question of the jurisdiction of the latter was the only

---

[2] 26 Stat. 827; 36 Stat. 1157, Jud. Code, § 238.

question involved, we drew the distinction between the question of the jurisdiction of the District Court in that aspect and that of the jurisdiction of the United States. *Louie* v. *United States,* 254 U. S. 548, 549, 550. There, on a charge of murder committed within the limits of an Indian reservation, the defendant contended that before the time of the alleged crime he had been declared competent and that the land on which the crime was alleged to have been committed "had been allotted and deeded to him in fee simple." "That the District Court . . . had jurisdiction to determine whether the *locus in quo* was a part of the reservation was not questioned" and the judgment was held to be reviewable by the Circuit Court of Appeals and not directly by this Court. See, also, *Pronovost* v. *United States,* 232 U. S. 487; *Pothier* v. *Rodman,* 261 U. S. 307, 311.

Where on the face of the record the District Court has jurisdiction of the offense and of the defendant and the defendant contends that on the facts shown the crime was not committed at a place within the jurisdiction of the United States, we have held that the judgment is one for review by the Circuit Court of Appeals in error proceedings and that the writ of *habeas corpus* is properly refused. *Toy Toy* v. *Hopkins,* 212 U. S. 542, 549. And, on removal proceedings, we have observed that in a case where the question "whether the *locus* of the alleged crime was within the exclusive jurisdiction of the United States demands consideration of many facts and seriously controverted questions of law," these matters "must be determined by the court where the indictment was found" and that "the regular course may not be anticipated by alleging want of jurisdiction and demanding a ruling thereon in a *habeas corpus* proceeding." *Rodman* v. *Pothier,* 264 U. S. 399, 402. See, also, *Henry* v. *Henkel,* 235 U. S. 219, 229. On the same principle, in *Walsh* v. *Archer,* 73 F. 2d 197, where the indictment charged

murder committed on board a vessel on the high seas, the court affirmed an order dismissing a petition for *habeas corpus,* it being contended that the vessel at the time of the commission of the crime was within the State of California and under its jurisdiction, saying—"Whether the location of the alleged crime was upon the high seas and exclusively within the jurisdiction of the United States required consideration of many facts and seriously controverted questions of law, including the alleged error involving the jurisdiction of the court." *Id.,* p. 199.

But the rule, often broadly stated, is not to be taken to mean that the mere fact that the court which tried the petitioner had assumed jurisdiction, necessarily deprives another court of authority to grant a writ of *habeas corpus.* As the Court said in the case of *Coy, supra,* pp. 757, 758, the broad statement of the rule was certainly not intended to go so far as to mean, for example, "that because a federal court tries a prisoner for an ordinary common law offence, as burglary, assault and battery, or larceny, with no averment or proof of any offence against the United States, or any connection with a statute of the United States, and punishes him by imprisonment, he cannot be released by *habeas corpus* because the court which tried him had assumed jurisdiction." Despite the action of the trial court, the absence of jurisdiction may appear on the face of the record (see *In re Snow, supra; Hans Nielsen, Petitioner, supra,* p. 183) and the remedy of *habeas corpus* may be needed to release the prisoner from a punishment imposed by a court manifestly without jurisdiction to pass judgment.

It must never be forgotten that the writ of *habeas corpus* is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired. *Ex parte Lange, supra.* The rule requiring resort to appellate procedure when the trial court has determined its own jurisdiction of an offense is not a rule denying the

power to issue a writ of *habeas corpus* when it appears that nevertheless the trial court was without jurisdiction. The rule is not one defining power but one which relates to the appropriate exercise of power. It has special application where there are essential questions of fact determinable by the trial court. *Rodman* v. *Pothier, supra.* It is applicable also to the determination in ordinary cases of disputed matters of law whether they relate to the sufficiency of the indictment or to the validity of the statute on which the charge is based. *Id.; Glasgow* v. *Moyer, supra; Henry* v. *Henkel, supra.* But it is equally true that the rule is not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent. Among these exceptional circumstances are those indicating a conflict between state and federal authorities on a question of law involving concerns of large importance affecting their respective jurisdictions. *In re Lincoln,* 202 U. S. 178, 182, 183; *Henry* v. *Henkel, supra,* pp. 228, 229.

We think that there are such exceptional circumstances in this instance. There appear to be uncertainty and confusion with respect to the question whether offenses within the Chickamauga and Chattanooga National Park are triable in the state or federal courts. It is represented that murder cases have been tried in the state court as well as in the federal court. If the District Court which tried petitioner gave consideration to the question, it made no comment on the subject, as it rendered no opinion and apparently made no record of its proceedings aside from the indictment and judgment. The matter stood without any judicial explication and without appeal. If, as contended, there being no disputed questions of fact, a reading of the Georgia statute of consent and cession would show that the United States had not acquired jurisdiction so as to bring the offense charged in the in-

dictment within the class of offenses cognizable in the District Court, we think that it was within the province of the court to which the application for *habeas corpus* was made to examine the question and to issue the writ in case the claim of want of jurisdiction in the trial court was found to be a valid one.

*Third.* Our examination of the Georgia statutes leads to the conclusion that it is unnecessary to remand the case for the determination of the District Court but that it may be, and should be, disposed of at once by our decision.

The lands which are embraced within the Chickamauga and Chattanooga National Park, and lie within the exterior limits of the State of Georgia, were acquired under the provisions of the Act of Congress approved August 19, 1890, and supplementary legislation. 26 Stat. 333. The Act provided for the establishment of the Park "upon the ceding of jurisdiction by the legislature of the State of Georgia." The lands were acquired in 1891 and subsequent years. Some were acquired by purchase and some by condemnation. Consent was given and jurisdiction was ceded to the United States by an Act of the Legislature of Georgia approved November 19, 1890. Georgia Laws, 1890–91, vol. 1, p. 199. The Act specifically reserved to the State of Georgia criminal jurisdiction in the ceded territory by the following proviso:

"*provided,* that this cession is upon the express condition that the State of Georgia shall so far retain a concurrent jurisdiction with the United States over said lands and roads as that all civil and criminal process issued under the authority of this State may be executed thereon in like manner as if this Act had not been passed; and upon the further express conditions, that the State shall retain its civil and criminal jurisdiction over persons and citizens in said ceded territory as over other persons and citizens in the State, and the property of said citizens and resi-

dents thereon, except land and such other property as the general government may desire for its use, and that the property belonging to persons residing within said ceded territory shall be liable to State and county taxes, the same as if they resided elsewhere, and that citizens of this State in said ceded territory shall retain all rights of State suffrage and citizenship . . .;"

Later Acts of cession contained a similar reservation as to criminal jurisdiction.[3]

If the matter rested with these statutes, there would be no room for doubt that jurisdiction to punish for crimes committed on the lands within the Park remained with the State. See *James* v. *Dravo Contracting Co., supra.* But in 1927, another cession act of a general character was passed by the state legislature, purporting to cede exclusive jurisdiction to the United States over any land "which has been or may hereafter be acquired for custom-houses, post-offices, arsenals, other public buildings whatever, or for any other purposes of government." Georgia Laws, 1927, p. 352. This Act reserved the right to serve civil and criminal processes but not criminal jurisdiction over offenses within the ceded territory.

The argument is strongly pressed that as this is a general act and there is no express repeal of, or specific reference to, the earlier special acts relating to the lands within the Park, it should not be regarded as yielding the jurisdiction which the earlier acts reserved to the State. But we find that the administrative construction is to the contrary. The administration of the Park was placed with the War Department[4] and it appears from its files that on July 14, 1930, upon a review of the pertinent legislation, the Judge Advocate General gave an opinion that the Act of 1927 "vests exclusive jurisdiction in the

---

[3] Georgia Laws, 1893, p. 110; 1895, p. 77; 1901, p. 85; 1902, p. 110.

[4] Transferred to the National Parks Service, Department of the Interior by Executive Order No. 6166, June 10, 1933.

United States over that part of the Chickamauga and Chattanooga National Military Park located within the State of Georgia" and that violations of law occurring on the ceded lands are enforceable only by the proper authorities of the United States. As this administrative construction is a permissible one we find it persuasive and we think that the debated question of jurisdiction should be settled by construing the Act of 1927 in the same way.

On this ground, the judgment of the Circuit Court of Appeals, affirming the order of the District Court denying the petition for *habeas corpus,* is

*Affirmed.*