**Ex parte RAY.**

District Court, W. D. New York.

July 19, 1943.

Thomas J. McKenna, of Buffalo, N. Y., for petitioner.

Beverly S. Calloway, Asst. Dist. Atty., of Olean, N. Y., for Cattaraugus County.

Nathaniel L. Goldstein, Atty. Gen. (Wortley B. Paul and Henry S. Manley, Asst. Attys. Gen., of counsel), for State of New York.

George L. Grobe, U. S. Atty., of Buffalo, N. Y., for the United States.

KNIGHT, District Judge.

Petitioner, a white man, on December 4, 1939, in the Supreme Court, Cattaraugus County, New York, was convicted and sentenced to life imprisonment for murder of a white man, in the City of Salamanca, Cattaraugus County, New York. The locus of the murder lies within the Allegany Indian Reservation; all the lands within the City of Salamanca being leased from the Seneca Nation of Indians. The conviction aforesaid was affirmed in the Appellate Division of the Supreme Court of New York and leave to appeal to the Court of Appeals of that state denied. In none of the proceedings has the question of jurisdiction been raised until the present. Petitioner, applying for writ of habeas corpus, contends the courts of New York State have no jurisdiction of the offense charged within the City of Salamanca. The county and state, with the United States concurring, seek a denial of the writ on several grounds. It is asserted that the application here is prematurely made, because the petitioner has not exhausted his remedies in the state court. It does appear that no application for writ has been made in the state courts. It has repeatedly been held that one must avail himself of the remedies in the state courts before he can seek relief through habeas corpus in this court. The rule is distinctly stated in Jones v. Dowd, 7 Cir., 128 F.2d 331, 334, wherein the court said: "A litigant in a State court is not at liberty to set in motion the jurisdiction of the Federal court by a petition for a writ of habeas corpus charging the State court has denied him due process under the Fourteenth Amendment, until the State has been given a chance to make its record under this same writ. The orderly administration of justice demands it." To the same effect, see also: Mooney v. Holahan, 294 U.S. 103, 115, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; Stonefield v. Buchanan, 6 Cir., 124 F.2d 23:

There is a further rule relating to the writ of habeas corpus in situations such as presented herein. It is distinctly stated in United States ex rel. Lesser v. Hunt, 2 Cir., 117 F.2d 30, 31, which arose in this District, as follows: "As we have several times said, intervention by lower federal courts in such cases is justified only in the rarest instances; that is, only when the state courts will not, or cannot, do justice. * * * his remedy, if he had any, was

only by application to the Supreme Court of the United States by certiorari."

The rule of comity requiring further proceedings to be taken before the United States Supreme Court, where a prisoner has been convicted in state courts and pursued his remedies of appeal therein, is also followed in other Circuits. See Johnson v. Wilson, 5 Cir., 131 F.2d 1; Kramer v. State of Nevada, 9 Cir., 112 F.2d 417; Jones v. Dowd, 7 Cir., 128 F.2d 331; United States ex rel. Parker v. Carey, 7 Cir., 135 F.2d 205.

■ Petitioner contends that exceptional circumstances are presented herein which should lead the court to exercise its discretion to issue the writ, citing in support thereof Bowen v. Johnson, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455. An inspection of that case does not reveal any question of conflicting review by a federal court of a state court system, and I do not believe the language of the opinion should be so extended. It seems to me that any discretion in the court should be exercised in favor of the state. United States ex rel. Parker v. Carey, supra.

In view of the foregoing I am of the opinion that the petition is insufficient in law and that the petitioner has chosen the wrong forum for relief, if he is entitled to any.

If I am in error in the above conclusion, it seems to me that the motion must be denied for another reason.

Originally New York and Massachusetts claimed sovereignty over the land in question, each under a crown grant from England. The dispute was settled in 1786 with Massachusetts ceding sovereignty to New York. The United States Constitution was adopted in 1787 taking away the power of the states of negotiating treaties in the constitutional sense and in due course of time treaties with the Indians required the concurrence and approval of the national government. In 1871 by Act of March 3, 1871, Sec. 2079, Rev.Stat., 25 U.S.C.A. § 71, the course of dealing with the Indians by treaty was abolished and in place therefor was substituted congressional action.

■ Under the Constitution there is no literal phrasing giving Congress the power of sovereignty in derogation of state sovereignty over the Indians. However, this has always been an implied power, and the Indian has been referred to as the ward of the nation, United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228; United States v. National Gypsum Co., D.C., 49 F.Supp. 206, 210, and this power has extended to cover the Indian and the reservation. Under the Constitution it is thus evident that the states have lost exclusive sovereignty over the Indians, and the question is presented to this court whether or not New York State has been relieved of its sovereignty in this case, the answer depending upon whether or not Congress has evinced any intent in the premises. If Congress has legislated to prescribe exclusive federal jurisdiction over the crime involved herein, the state law must bow thereto. United States v. National Gypsum Co., supra; United States v. Forness, 2 Cir., 125 F.2d 928, 932.

Petitioner contends that Section 217, Title 25 U.S.C.A., extends the general laws of the United States to the Allegany Reservation and as a corollary thereto extends U.S.C.A., Title 18, Sec. 451, subsec. 3, and sec. 452, the former prescribing exclusive jurisdiction in the United States over crimes defined in the Chapter which includes the latter, or Section 452, defining murder and which includes the acts involved herein—homicide in the perpetration of a robbery. The crux of petitioner's contention lies in the interpretation of Section 217, Title 25 U.S.C.A. The language of that section is as follows: "Except as to crimes the punishment of which is expressly provided for in this title, the general laws of the United States as to the punishment of [any] crimes committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country."

Does the language above quoted "Indian Country" include the City of Salamanca? An examination of Title 25, Chapt. 6, Sec. 211 to 266, shows that the phrase "Indian Country" is used therein innumerable times. Although ordinarily it would be presumed that the meaning of this phrase would be the same in each instance, this construction would yield if an inspection shows that different meanings were intended in the various uses. Section 219 prescribes passport requirements for the "Indian Country"; Section 220 authorizes removal of certain persons from the "Indian Country"; while Section 222 authorizes removal from "any tribal reservation"; Section 242 specifically defines Osage County, Oklahoma as "Indian Country", but only within statutes

prescribing the sale of intoxicants. Section 1 of the Act of 1834, 4 Stat. 729, defined "Indian Country" as land west of the Mississippi with certain exceptions. From the foregoing it is evident that the term "Indian Country" has been used in various meanings by Congress, and it is necessary to examine the particular section and circumstances to determine the meaning intended.

It is said that the term "Indian Country" embraces all land within the United States to which the Indian title has never been extinguished. Ex parte Crow Dog, 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030. In United States v. Leathers, 26 Fed.Cas. 15, 581, page 897, 899, 900, it is stated: "From the earliest period of our history the boundaries of the Indian country have been narrowing. * * * The policy has been to separate the Indian tribes from the rest of the people, and to set apart for their exclusive use specific portions of the public domain. The statutes cited show that 'Indian country' is the term used generally to describe country in the occupation of the Indians, to which their title or right of occupancy * * * has not been extinguished."

No cases are cited by or on behalf of petitioner which apply Section 217, Title 25, and Section 542, Title 18, to a similar set of facts as are herein presented.

Objectively it appears that there are six to eight Indian families residing in the City of Salamanca having a total population of about 9,000. During the last 40 years several murder cases have been prosecuted to conviction in the state courts as have generally all felonies where Indians have not been involved. Under the Act of Feb. 19, 1875, 18 Stat. 330, the municipal laws and regulations of New York were extended over the leased property and since incorporation as a city in 1913, all petty crimes, Indian or otherwise, have been prosecuted in its City Court. The United States Attorney appearing herein has presented the administrative view that New York State has jurisdiction, citing United States v. McBratney, 104 U.S. 621, 26 L.Ed. 869, and Draper v. United States, 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419. The administrative view and the de facto jurisdiction assumed by the New York courts, while not controlling on this decision, should be accorded great weight, having existed a long period of time without any congressional change. See: United States v. American Trucking Ass'ns, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345.

In view of the foregoing, I hold that Congress has not prescribed exclusive federal jurisdiction over the acts herein for which petitioner has been convicted, and I conclude that New York State law controls unless and until Congress passes legislation superseding it.

Petitioner contends that the rule of United States v. Forness, 2 Cir., 125 F.2d 928, is determinative here. The decision in that case was that Congress having enacted laws with respect to Indian leases in Salamanca, the New York State law with respect to leases was superseded. Such is the holding of the Second Circuit, and this opinion is not in conflict therewith. My holding is that Title 25, Sec. 217, U.S.C.A., does not extend the general criminal laws over the City of Salamanca.

As a result, the state law of New York applies, and the courts of that state correctly and properly assumed jurisdiction in the judgment and sentence of petitioner, and I hold that the motion and petition for the writ of habeas corpus must be denied.

In view of the foregoing, it is unnecessary to decide whether or not petitioner, by failing to raise the question of jurisdiction in the prior proceedings, has waived his right to do so now.