385 A.2d 489

**COMMONWEALTH of Pennsylvania**

v.

**Ray E. FIRESTONE, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 8, 1976.

Decided April 13, 1978.

578

Thomas P. Ruane, Jr., Uniontown, for appellant.

Conrad B. Capuzzi, District Attorney, Uniontown, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from the denial of a petition under the Post-Conviction Hearing Act, Jan. 25, 1966, P.L. (1965) 1580, § 1, 19 P.S. § 1180–1 et seq.

On August 24, 1972, appellant, another man, and two young women—one of them a minor—drove to a bridge on the Cheat River. The two men in the party had a swim and the group drove about a half mile further along the shore. Appellant and the young woman who was a minor walked a short distance into the woods and had sexual intercourse. The next day appellant was arrested and charged with statutory rape and corrupting the morals of a minor.

At trial a Commonwealth witness, a state trooper, testified:

Q. Where was the place they had gone swimming?

A. According to the information we gathered from Pletcher and Firestone [appellant] it was in Springhill Township, along the river, apparently in the village of Nilan or near there.

N.T. 97.

The given locations are in southwestern Pennsylvania.

Later, at the hearing on the post-conviction petition, appellant testified that he had informed both his privately retained trial counsel and his court appointed appellate counsel that he had doubts that the conduct charged had occurred in Pennsylvania. At trial, however, he did not deny or introduce any other evidence to rebut the trooper's testimony.

The jury found appellant guilty. After post-trial motions were denied, he was sentenced to costs, a fine of $200, and imprisonment for five to ten years. He appealed to this court, where his conviction was affirmed. *Commonwealth v. Firestone*, 229 Pa.Super. 706, 322 A.2d 662 (1974). He petitioned twice for allocatur, but was denied. He then began to serve his prison sentence.

On May 15, 1975, appellant filed a Post-Conviction Hearing Act petition, and a hearing was held June 27, 1975. At that hearing, a substantial quantity of evidence was admitted to prove that appellant and his friends had crossed the Pennsylvania border and that the criminal activity had actually occurred in West Virginia; the evidence was uncontradicted. Nonetheless, on February 25, 1976, the petition was denied.

—1—

■ Jurisdiction in criminal matters rests solely in the courts of the state or country in which the crime is committed. *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892). The locus of a crime is always a factual

issue because a court has no jurisdiction unless the act charged occurred in the county where the defendant is tried. *Commonwealth v. Mull*, 316 Pa. 424, 175 A. 418 (1934). It was long held that even if the issue of the locus of a crime was not specifically raised, the verdict of guilty cured the defect if the locus was not disputed, because a verdict of guilty includes such a finding. *Commonwealth v. Bubnis*, 197 Pa. 542, 47 A. 748 (1901); *Commonwealth v. Kaiser*, 184 Pa. 493, 39 A. 299 (1898); *Commonwealth v. Tarsnane*, 170 Pa.Super. 265, 85 A.2d 606 (1952). However, in *Commonwealth ex rel. Chatary v. Nailon*, 416 Pa. 280, 206 A.2d 43 (1965), the Supreme Court indicated that some evidence of locus must be offered by the prosecution to sustain a guilty verdict.

 Here, the state trooper testified as to locus. Although the appellant demurred to the evidence and thereby necessarily challenged jurisdiction, the jury had a basis for a finding of jurisdiction. When the conviction is thus initially proper, the question arises: Should we now permit the defendant to attack jurisdiction collaterally?

In *Commonwealth ex rel. Chatary v. Nailon, supra*, the rule is stated as follows:

> It is true that the question of lack of jurisdiction of a trial court should, as a general rule, be reviewed by appellate proceedings and not by means of habeas corpus. However, the question may be raised in habeas corpus where the lack of jurisdiction is "clear and undisputable" on the face of the record . . . .

416 Pa. at 285, 206 A.2d at 46.

Thus in *Chatary* the Court allowed a collateral attack on jurisdiction because lack of jurisdiction was clear on the face of the record. The defendant there was charged with possession of stolen goods. The goods were stolen in Montgomery County, where the defendant was tried, but the defendant was found with them in Philadelphia County. The Court noted that there was no evidence of where the defendant had gotten possession of the goods and that it could not properly be inferred that he had gotten possession in Mont-

gomery County. The defendant, by demurring, had necessarily challenged jurisdiction. Therefore, the Court concluded, the Commonwealth had failed to establish jurisdiction.

The Court in *Chatary* cited *Commonwealth ex rel. Ritchey v. McHugh,* 189 Pa.Super. 515, 151 A.2d 659 (1959). The facts there were similar to the facts here. The relator had been tried for statutory rape in Cambria County, but at his habeas corpus hearing he produced evidence that the crime had occurred in Blair County. The Court held, however:

> We think the rule applicable in the present case is that, unless the court's lack of jurisdiction is clear and indisputable upon the face of the record, a writ of habeas corpus should not be granted to review an erroneous determination by a court that it has territorial jurisdiction over an offense.

189 Pa.Super. at 519, 151 A.2d at 661.

Appellant recognizes that *Ritchey* is against him, but he argues that the fact that the present case involves the possibility of jurisdiction correctly being in another state rather than in another county is an important distinction. He contends that the courts' reluctance to hear jurisdictional challenges on habeas corpus is a matter of policy, not of lack of power, *Bowen v. Johnston,* 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455 (1939), and that we should extend habeas corpus review to him because otherwise he may be prosecuted for the same offense by West Virginia when he finishes his prison term in Pennsylvania, West Virginia having no statute of limitations on felonies such as statutory rape.

*Bowen v. Johnston, supra,* did indeed indicate that the reluctance to hear jurisdictional challenges on habeas corpus is a matter of policy, not of lack of power:

> The rule is not one defining power but one which relates to the appropriate exercise of power. . . . [T]he rule is not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent. Among these exceptional circumstances are those indicating a conflict between state and federal authorities on a question of law

involving concerns of large importance affecting their respective jurisdictions.

306 U.S. at 27, 59 S.Ct. at 446 (italics in original). Thus in *Bowen* the Supreme Court decided the question of who had jurisdiction over a murder in a national park. In *Commonwealth ex rel. Ritchey v. McHugh, supra,* this court adopted the reasoning of *Bowen,* and denied review of jurisdiction, thus acknowledging that courts do have the power to review jurisdiction on habeas corpus but, apparently, finding that the facts of that case were not "exceptional."

The policy behind the courts' reluctance to hear jurisdictional challenges on habeas corpus is sound:

> "It would be very disorderly for defendants to hold back an objection to the jurisdiction of the court, and then raise it by rebellion against the public authorities, when the writ of the Commonwealth came to be executed; and habeas corpus would be a most disorderly writ, if it could be thus used in contempt of authority": *Passmore Williamson's* Case, 26 Pa. 9, 29. We cannot permit it to be so used.

> *Commonwealth ex rel. Greevy v. Reifsteck,* 271 Pa. 441, 115 A. 130 (1921).

Even where there may be no evidence of such "rebellion", the policy nonetheless encourages defendants to seek out their defenses early. We find no reason here to depart from the policy.

–2–

■ If indeed we thought that appellant might be prosecuted for the same offense in West Virginia after he finishes his prison term in Pennsylvania, we might find the facts "exceptional" and reach a different result. We believe, however, that such a prosecution is unlikely as a practical matter.[1] Furthermore, if appellant should be charged in

---

1. In the first place, it seems unlikely that the West Virginia authorities would seek to prosecute. But in the second place, Pennsylvania could not extradite appellant. At an extradition hearing, one fact

West Virginia, he would be able to raise the Pennsylvania proceeding in his defense.

It is true that two sovereignties are involved; but the doctrine that the same act may constitute a criminal offense against two sovereignties

> will be found to relate only to cases where the act sought to be punished is one over which both sovereignties have jurisdiction. . . .

> But the principle that the offender may, for one act, be prosecuted in two jurisdictions, has no application where one of the governments has exclusive jurisdiction of the subject-matter, and therefore the exclusive power to punish.

*Southern Ry. Co. v. R. R. Comm. of Indiana,* 236 U.S. 439, 445–46, 35 S.Ct. 304, 305, 59 L.Ed. 661 (1915).

Here the crime can have occurred in one and only one state, and only that state has jurisdiction. The question therefore becomes, Who will decide which state that is? A Pennsylvania jury has found as a fact that the crime occurred in Pennsylvania. The normal rules of this jurisdiction would at this point accept that factual finding as final. *Commonwealth ex rel. Chatary v. Nailon, supra; Commonwealth ex rel. Ritchey v. McHugh, supra.* It follows that it would be contrary to the principle of the Full Faith and Credit Clause, Art. IV, § 1 of the Constitution[2] for West Virginia to relitigate that factual question, and to decide that contrary to the findings in Pennsylvania, the offense occurred in West Virginia.

It might be argued that West Virginia had no notice of appellant's prosecution in Pennsylvania and therefore has

that must be proved is that the person demanded was in the demanding state on the day the offense was committed. *Commonwealth ex rel. Pacewicz v. Turley,* 399 Pa. 458, 160 A.2d 685 (1960); *Commonwealth v. Kulp,* 225 Pa.Super. 345, 310 A.2d 399 (1973). West Virginia could not prove by using the facts of the offense that appellant was in West Virginia that day, because the locus of the offense is res judicata in Pennsylvania courts.

2. "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."

not had its day in court on the question of where the offense occurred, and under normal principles of collateral estoppel should not be bound by the Pennsylvania finding. The Supreme Court of the United States has recognized, however, that under certain circumstances the needs of federalism dictate such a result. In *Sherrer v. Sherrer,* 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948), the Court held that a Massachusetts court could not relitigate a Florida court's finding of jurisdiction where that finding was based on a finding that the wife was a resident of Florida and where the husband had been represented in the Florida action. It is true that one consideration in the Court's decision was that the husband had had the opportunity to contest the jurisdiction of the Florida court. But the Court went on to consider, as a separate matter, the interest of Massachusetts, which had not had its day in court, in determining "the incidents of basic social relationships into which its domiciliaries enter," 334 U.S. at 354, 68 S.Ct. at 1092. It held:

> This is not a situation in which a State has merely sought to exert such power over a domiciliary. This is, rather, a case involving *inconsistent assertions of power* by courts of two States of the Federal Union and thus presents considerations which go beyond the interests of local policy, however vital. . . . The full faith and credit clause is one of the provisions incorporated into the Constitution by its framers for the purpose of transforming an aggregation of independent, sovereign States into a nation. If in its application local policy must at times be required to give way, such "is part of the price of our federal system". *Williams v. North Carolina,* 317 U.S. 287, 302, 63 S.Ct. 207, 87 L.Ed. 279 (1942).

> 334 U.S. at 354–355, 68 S.Ct. at 1092–1093 (emphasis added; footnote omitted.)[3]

**3.** It was clear to Mr. Justice FRANKFURTER that the Court was really saying that Massachusetts was bound by the Florida decision, and he dissented on that ground. 334 U.S. at 356 *et seq.,* 68 S.Ct. 1087. *Sherrer* thus threw considerable doubt on *Williams v. North Carolina,* 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945), which held:

In this case appellant, like the husband in *Sherrer,* had an interest in asserting that jurisdiction was in the court of another State, which was not represented or otherwise aware of the proceeding. Also, appellant, like the husband in *Sherrer,* had a full opportunity to litigate jurisdiction. Given these circumstances, we are confident that "part of the price of our federal system" is that West Virginia may not prosecute appellant again. We base this conclusion on the policy of the Full Faith and Credit Clause, but it may be added that the conclusion is strengthened by the obvious analogy with cases of double jeopardy, were a West Virginia prosecution to be attempted.

–3–

■ Finally, we note that appellant did not raise in his post-conviction hearing petition the claim that trial counsel was ineffective in not paying attention to the question of jurisdiction, after appellant had expressed his doubts about where the conduct charged had occurred. Paragraph 9 of the petition might perhaps be considered as raising the question obliquely:

9. The issue which I have raised in this petition has not been finally litigated or waived because although I advised my trial counsel that I strongly believed that the crimes I am alleged to have committed and for which I have been sentenced occurred in the State of West Virginia, my said counsel, for reasons not known to me, did not controvert the Commonwealth's allegations as to the exact location of the alleged crimes. I have not waived this issue because I am advised by counsel that jurisdiction of

As to the truth or existence of a fact, like that of domicil, upon which depends the power to exert judicial authority, a State not a party to the exertion of such judicial authority in another State but seriously affected by it has a right, when asserting its own unquestioned authority, to ascertain the truth or existence of that crucial fact.

325 U.S. at 230, 65 S.Ct. at 1095 (footnote omitted).

*But see Hamilton v. Dillon,* 110 Ohio App. 489, 167 N.E.2d 356 (1959). The Court in *Sherrer* distinguished *Williams* as involving a State proceeding in which the husband had not participated, a limitation that *Williams* itself pointed out, 325 U.S. at 230 n. 6, 65 S.Ct. 1092.

the subject matter cannot be consented to or waived by a defendant.

However, no matter how generously we might read this paragraph, the record at the post-conviction hearing reveals that ineffectiveness of counsel was not what appellant had in mind. In fact, the *Commonwealth* argued energetically that rather than jurisdiction, the case involved ineffective counsel, Post Conviction Hearing, N.T. 38, but *counsel for appellant* insisted that it did not involve ineffective counsel but only jurisdiction, *id.*, N.T. 45.

Affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.