**UNITED STATES of America ex rel. Jay Francis LAUGHLIN, Relator,**

v.

**Harry E. RUSSELL, Superintendent, Respondent.**

**Misc. No. 3623.**

United States District Court
E. D. Pennsylvania.

Oct. 25, 1967.

On Petition for Reconsideration
March 6, 1968.

Jay Francis Laughlin, Huntingdon, Pa., for petitioner.

No appearance filed, for respondent.

MEMORANDUM AND ORDER

JOHN MORGAN DAVIS, District Judge.

On October 30, 1953, the relator was arraigned before the late and esteemed Judge Gerald F. Flood of the Court of Common Pleas, Philadelphia County. After having accepted pleas of guilty to

nine separate counts arising out of two separate incidents of armed robbery and one incident of larceny, Judge Flood heard testimony regarding the nature of the offenses. Sentencing was deferred for ten days until November 9, 1953, when the relator received seven and one-half to fifteen years imprisonment. No appeal was prosecuted.

In 1965, over twelve years later, a petition for a writ of habeas corpus was filed with the Court of Common Pleas, Philadelphia County.[1] This petition was dismissed without prejudice on April 18, 1966, with leave to refile on the proper form, in accordance with the Pennsylvania Post Conviction Hearing Act.[2] The relator complied, and another petition was filed on May 5, 1966, in which he raised the issues to be discussed herein.

On May 6, 1966 a rule was entered upon the Commonwealth to show cause why a hearing should not be granted.

The Court then appointed counsel on July 15, 1966. A rather surprising event then transpired on January 20, 1967, at which time an *ex parte* hearing was conducted, attended only by two prosecuting attorneys from the District Attorney's office. After having briefly heard a recitation of the allegations, the Court dismissed the petition as frivolous.[3]

One week later, the relator's counsel requested a rehearing, or in the alternative, to be relieved from the Court appointment. An order was then entered on February 6, 1967 vacating and rescinding the January 20th order of dismissal.

As the above account reflects, there has been no definitive review of the relator's convictions, either direct or collateral, within the state judicial system. Initially, we must therefore consider whether the state remedial procedures have been exhausted.

---

1. Miscellaneous Court, March Term, 1956, Number 5234.

2. 19 P.S.Pa. section 1180–1 et seq.

3. The entire proceeding is included *verbatim*, as follows:
"*MR. WHITE:* [Assistant District Attorney] Petitioner had pleaded guilty to two counts of armed robbery and was sentenced to seven and a half to fifteen years.
Petitioner now makes the following allegation: number one, a coerced confession was introduced into evidence:
Number two, statement was obtained in absence of counsel at the time when representation was constitutionally required and was introduced into evidence against him;
Number three, petitioner denied right of representation by competent counsel;
Number four, a plea of guilty was unlawfully induced.
In our answer, petitioner's plea of guilty waives all non juristic defenses, and therefore, precludes his relief on the allegations one through three.
*THE COURT:* The record also shows that he was tried before Judge Gerald F. Flood.
Petitioner also alleges that he was inadequately represented by counsel?

*MR. WHITE:* Yes, sir.
*THE COURT:* Let the record show that the petitioner was represented by John F. Hassett, well known to this court and an outstanding voluntary defender and subsequently an Assistant District Attorney.
*MR. WHITE:* Petitioner's claim of unlawful plea of guilty is based on the assertion that in pleading guilty to one count of armed robbery which he admits, he inadvertently pleaded guilty to a second count which he denied.
The claim has no merit and examination of the record reveals that two counts were kept distinct at all times and that the Assistant District Attorney Oliensis clearly announced to counsel at the beginning of the hearing and Judge Flood took pains to clarify the two individual counts to which the petitioner was pleading and at no point did petitioner object to the counts where he pleaded guilty.
*THE COURT:* All of that appears in the court record?
*MR. WHITE:* Yes, Your Honor.
*THE COURT:* The petition is denied as frivolous. ― ― ― ― ― ― ―
PETITION DENIED."

## EXHAUSTION OF STATE REMEDIES

The Federal Habeas Corpus Act states that a petition shall not be granted:

[U]nless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available state corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.[4]

■■ It is well established that the purpose of the exhaustion doctrine is to permit the state courts to correct any errors which may have crept into their criminal process without interference from outside sources.[5] In addition, deference to the state has resulted from the traditional recognition of sovereignty which each State enjoys concurrent with the United States. But where the prosecution of collateral review becomes enmeshed in a net of procedural barriers and unexplained delay, preservation of the remedy as an effective safeguard of personal rights then becomes the more significant consideration. In construing the application of what is presently section 2254 of the Act, Justice Rutledge in Marino v. Ragen, 332 U.S. 561, 564, 68 S.Ct. 240, 242, 92 L.Ed. 170 (1947) in a concurring opinion, stated:

* * * [I]t would be nothing less than abdication of our constitutional duty and function to rebuff petitioners with this mechanical formula [of failure to exhaust state remedies] whenever it may become clear that the alleged state remedy is nothing but a procedural morass offering no substantial hope of relief.

Again, in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the problem of procedural hurdles in a State judicial system was analyzed in a manner consistent with the philosophy of *Marino*.[6]

■ Since over two years of unexplained delay has been encountered by the relator in attempting to obtain collateral review with no apparent success, his state remedies have been exhausted for the purposes of this petition. An examination can therefore be commenced into the merits of his cause. The relator has raised eight allegations of error for which relief is sought.

## SELF INCRIMINATION

■■ After his arrest, it is alleged that the police failed to advise the relator of his right to remain silent, and of his right to counsel.[7] The arrest at issue transpired on August 29, 1953, over 10 years before the prophylactic rules regarding the right to counsel and self incrimination were promulgated in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Consequently, the failure to warn did not constitute reversible error *per se*.[8]

## COERCED CONFESSION

■ In Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966), it was demonstrated that the non-retroactivity of *Miranda* and *Escobedo* does not affect the requirement for ascertaining the voluntariness of a confession. It is contended that the confession was coerced from the re-

4. 28 U.S.C.A. section 2254.

5. See Skol, A Handbook of Federal Habeas Corpus, § 22.2 (1965).

6. Shortly thereafter, in Bartone v. United States, 375 U.S. 52, 54, 84 S.Ct. 21, 22, 11 L.Ed.2d 11 (1963), the Court held: Where state procedural snarls or obstacles preclude an effective state remedy against unconstitutional convictions, federal courts have no other choice but

to grant relief in the collateral proceeding.

7. Allegation 12(a), petition for writ of habeas corpus, Misc. No. 3623, filed July 25, 1967, hereafter referred to as "relator's petition".

8. Neither Escobedo nor Miranda are retroactive to 1953, the date of the relator's arrest and conviction. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

lator "through treachery, threats and underhanded methods." [9] But the record is completely devoid of any attempt to bring this to the attention of the trial court, although over 60 days elapsed from the time of the confession to the appearance before the trial judge. Unlike *Davis,* where the question of an allegedly coerced confession was brought before the Court at the time of trial, the relator elected to enter a plea of guilty, thereby foreclosing any consideration by the trial judge of this matter. This Court finds it difficult to believe that an accused would sit by for over two months, failing to raise such an essential matter as a coerced confession, and prefer to docilely remain silent by entering a plea of guilty. In so holding, we rely upon the observation of Justice Brennan in Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1962):

> * * * we recognize a limited discretion in the federal judge to deny relief to an applicant under certain circumstances * * * [H]abeas corpus has traditionally been regarded as governed by equitable principles * * * Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks. * * * We therefore hold that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of

the state courts and in so doing has forfeited his state court remedies.

## INTRODUCTION INTO EVIDENCE OF AN ILLEGAL CONFESSION

■ It is alleged that the confession was the sole evidence used against the relator.[10] But an examination of the transcript of testimony reveals that the Court initially accepted the relator's guilty plea before any mention of the confession was made. The confession was never introduced into evidence at any stage of the proceeding. This allegation is therefore devoid of any merit.[11]

## FAILURE TO ESTABLISH THE CRIME CHARGED

The relator contends that the Commonwealth failed to establish that the crime for which he was convicted and sentenced had ever occurred. On the contrary, he contends, the notes of testimony will reveal the fact that such a crime was never committed.[12]

It is true that the transcript of testimony contains the statement by a police detective that victims Finley and Forde in the tavern robbery had no money. The relator concludes that the conviction and sentence on bill number 754, pertaining to armed robbery of the victim Forde was therefore improper.[13]

■ But again, since the relator's plea was the sole basis for a finding of

9. Allegation 12(c), relator's petition.

10. Allegation 12(b), relator's petition.

11. After having accepted a plea of guilty to bill of indictment number 754, (at issue) and others, the Court permitted the Commonwealth to present evidence in the form of testimony by Detective Albert L. Connor, who outlined the crimes charged, and the roles which each defendant played (subject to cross examination by the relator's counsel). No statements, confessions or other ancillary evidence of the crimes charged, were before the Court.

12. Allegation number 12(b), relator's petition.

13. The testimony in relevant part is as follows:

"DETECTIVE CONNOR: * * * He [the relator] said it was after closing time and they thought this would be a good time to get the receipts, because they tried the door and it was still open. They entered the J. P. Ryan Cafe and at the point of a gun held up the bartender and waitress and one or two people who were still in the cafe and from a Thomas Donohue they took $7.00 in cash and from a James McGinley took $1.50 in cash and from William Dougherty they took $1.00 in cash and at that time there were two other persons, Vincent Finley and John Forde, from whom they got no money. [N.T. p. 7]."

guilty, the subsequent testimony of the police officer although conflicting in part, did not enter into the Court's consideration of guilt or innocence. Indeed, by pleading guilty at the outset, the relator foreclosed any weighing of evidence by the Court and particularly any evidence which would be germane solely to the question of guilt or innocence.[14]

■ In addition, the sentencing was based on all of the bills of indictment which were before the Court.[15] It is evident that the Court intended to impose sentence collectively, since none of the other bills were dismissed.[16] Although the sentence of seven and one half to fifteen years was subsequently attributed to bill number 754, the other counts were not dismissed, but only suspended, and could therefore be reinstated retroactively to the date of sentencing. Commonwealth v. Giovengo, 188 Pa.Super. 220, 146 A.2d 629 (1958).[17]

## RIGHT OF CONFRONTATION

The relator contends that since the victim John Forde never signed a complaint or appeared as a witness at any of the proceedings, his right to confront his accuser was denied.[18]

■ The "confrontation clause" of the 6th Amendment does indeed require that the accused be permitted to hear witnesses who testify against him. But this does not require the prosecutor to furnish any particular witness. However, it does serve as a guarantee that the accused will be cognizant of all the evidence which is brought before the court. The principal purpose of the confrontation clause is to prevent depositions, affidavits or other *ex parte* evidence from being used against an accused, in lieu of personal testimony with the concurrent right of cross examination, thereby affording the accused the opportunity to challenge the veracity of the statements presented. Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

■ Here, the victim Forde was never called upon to testify, either in person, or by deposition. Consequently, the right of confrontation never arose.

---

14. The transcript of the proceeding reveals that the Court received the relator's plea of guilty at the very outset [N.T., p. 2]. The testimony of Officer Connor, presented solely for the edification of the Court as to the nature of the offenses, came later. [N.T. p. 7]

15. The bills of indictment before the Court were as follows:

| Indictment | Charge | Victim |
|---|---|---|
| 753 | Larceny of Automobile | William Taylor |
| 754 | Armed Robbery (tavern) | John Forde |
| 755 | Armed Robbery (tavern) | William Dougherty |
| 756 | Armed Robbery (tavern) | Vincent Finley |
| 757 | Armed Robbery (tavern) | Thomas Donohue |
| 760, 61, 63, 66 | Armed Robbery (realtor) | Harry Manashil |

---

16. The sentencing, in relevant part, was as follows:
THE COURT: Well, there is not much difference in the records [of the co-defendants] so the only distinction I make will have to be based on the fact that he [the relator] wasn't in on all of these things. How many was he in—two?
MR. HASSETT: [counsel for the relator] Well, two, sir. the larceny of the automobile. There was an automobile taken for the purposes of executing one of the robberies, and there were two robberies, sir.
THE COURT: In the case of Laughlin, 7½ to 15 years in the Eastern Penitentiary [N.T. p. 36].

17. See also Commonwealth ex rel. Wilhelm v. Morgan, 278 Pa. 395, 123 A. 337 (1924); Commonwealth v. Fox, 69 Pa. Super. 456 (1918).

18. Allegation number 12(d), relator's petition.

The relator was free to call Mr. Forde as a defense witness had he so desired. But instead, he elected to plead guilty, thereby waiving the introduction of evidence of this nature.

## PLEA OF GUILTY UNLAWFULLY INDUCED

 Counsel advised the relator to plead guilty, basing his recommendation upon the existence of the confession. It is contended that since the confession was coerced, the plea of guilty was necessarily the consequence of unlawful inducement.[19]

The circumstances surrounding the confession have been examined in an earlier portion of this opinion with the conclusion that no error could be discerned. Since the confession was valid, it follows that this contention is also without merit.

## INCOMPETENCY OF COUNSEL

 It is contended that the court appointed counsel was inadequate because of lack of preparation, failure to investigate facts surrounding the incidents charged, and failure to object to the introduction of the coerced confession.[20]

On the contrary, the transcript of trial does not indicate that counsel was ill prepared. Indeed, a most professional presentation was made by counsel in an attempt to call upon the benevolence and mercy of the Court, which apparently met with success, considering the relatively light sentence which the relator received.[21] In addition, the effort of the relator's counsel in bringing to the attention of the Court the degree of crim-

inal participation of the relator, in comparison to his co-defendant was instrumental in achieving a less severe sentence.[22]

 The contention of ineffectiveness of counsel as a result of insufficient time for preparation is also without merit. Over 10 days elapsed between the time of arraignment and the date of sentencing. Counsel therefore had ample time to effect the necessary preparation, and to review all prior proceedings. This Court cannot hold as a matter of law, that counsel had insufficient time to represent the relator in a Constitutionally acceptable manner.

## OBSTRUCTION OF RIGHT TO APPEAL

 Finally, it is contended that failure of the trial court and defense counsel to advise the relator of his right to appeal constitutes reversible error.

This Court is unable to discover any such requirement.

For the reasons stated above, the petition for a writ of habeas corpus is denied. It is so ordered.

## ON PETITION FOR RECONSIDERATION

The relator has petitioned the Court to "rescind" the Memorandum and Order dated October 25, 1967 in the above action, and reconsider his petition for a writ of habeas corpus.[1] The basis of this petition is that no evidentiary hearing was conducted, as specified in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963): " * * *

---

19. Allegation number 12(e), relator's petition.

20. Allegation number 12(f), relator's petition.

21. See notes of testimony, p. 23 et seq.

22. The relator received a sentence of 7½ to 15 years imprisonment for the three crimes in which he participated. The co-felons received 10 to 20 years, although additional charges were involved.

1. The "Petition Requesting a Full and Fair Evidentiary Hearing" was submitted on December 5, 1967, forty (40) days after the petition for a writ of habeas corpus was denied. In compliance with the recent decision of the Third Circuit in Fitzsimmons v. Yeager, 391 F.2d 849, February 19, 1968, the relator may no longer appeal, since the 30 day period for filing a notice of appeal has expired (and has not been tolled by the petition for reconsideration presently before the Court).

if the fact-finding procedure of the State Court was not adequate to afford a full and fair hearing and to ascertain the truth * * *", a full and fair hearing would be granted by the District Court.

■ We have carefully analyzed and reconsidered the allegations of error contained in the relator's petition, in light of the circumstances prescribed in Section 2254(d) of the Judicial Code, for which a hearing to determine *factual* issues is required, and in the light of the standard contained in Townsend v. Sain. Our conclusion is that no error has transpired, and that no evidentiary hearing is required to properly consider the allegations of error which the relator has raised.

In the petition for habeas corpus, the relator raised numerous allegations which were subsequently discussed in our Memorandum and Order of October 25, 1967 under eight separate categories. Of the eight, four were determined to be without merit, solely on the basis of *law*, and not of fact; i. e., assuming the allegations to be in accordance with the relator's contentions in *every* respect, no *legal* (Constitutional or Federal Statutory) error transpired. The reasons therefor were stated in the Memorandum and Order of October 25, 1967 and therefore need not be repeated here. The four categories are:

Self-Incrimination
Failure to establish the crime charged
Right to Confrontation
Plea of Guilty Unlawfully Induced.

■ Since the relator's "confession" was not introduced at trial as the record clearly indicates, his fifth category— alleging that the confession was coerced —is of no legal significance. Similarly, the sixth category—that the confession was introduced into evidence is just not true. The purpose of establishing a trial transcript is to perpetuate precisely what was considered by the Court. It is clear, as the record indicates, that the "confession" was not introduced at any time; indeed, the relator pleaded guilty, there-

by precluding the consideration by the Court of any "evidence" of guilt.

■ The seventh allegation is that counsel was incompetent. This has also been conclusively rebutted by the trial transcript, and ancillary trial documents. This Court, as well as other Federal Courts, have consistently determined that the efficacy of counsel may be ascertained in certain circumstances, solely by the examination of the trial transcript; see United States ex rel. Gary v. Hendrick, 238 F.Supp. 757, 758 (E.D. Pa.1965):

> Relator's final allegation that he was not represented by "proper legal counsel" at his trial on December 23, 1963, is clearly without merit. A reading of the official notes of testimony of the trial demonstrates that relator was competently and ably defended * * *

We believe that such a circumstance existed in the instant case. See also the analysis by the Pennsylvania Supreme Court regarding judicial review of the competency of counsel, Commonwealth ex rel. Washington v. Maroney, 427 Pa. 599, 235 A.2d 349 (1967).

■■ Finally, the relator's eighth allegation was that failure of the trial judge (or of counsel) to advise him of the right to appeal constitutes error. We know of no decision which would *Constitutionally* require the trial court (or counsel) to so apprise a defendant. Indeed, the availability of an appellate procedure is not guaranteed by the Constitution. See, e. g., Application of Boyer, 226 F.Supp. 888 (D.N.J.1966), aff'd, 328 F.2d 620 (3rd Cir. 1964) cert. den., 377 U.S. 937, 84 S.Ct. 1342, 12 L.Ed.2d 300 (1965); Mooneyham v. State of Kansas, 339 F.2d 209 (10th Cir. 1964); Horton v. Bomar, 335 F.2d 583 (6th Cir. 1964).

■ It is possible, however, that an appeal *Nunc Pro Tunc* will be permitted by the Commonwealth of Pennsylvania, if the relator elects to pursue this avenue of relief, in the light of recent decisions. See, e. g., Commonwealth ex rel. Stanley

v. Myers, 209 Pa.Super. 396, 228 A.2d 215 (1967); Commonwealth v. Grillo, 208 Pa.Super. 444, 222 A.2d 427 (1966); Commonwealth v. Smith, 15 Chest. 104 (1967). But since this is solely a question of state law, it may not form the basis for relief under the Federal Habeas Corpus Statute, 28 U.S.C. 2254(a).

For the reasons stated above, the relator's petition for reconsideration is

Denied.

It is so ordered.