UNITED STATES of America ex rel.
Theodore GEISLER, Appellant,

v.

Gilbert A. WALTERS, Superintendent,
Western Correctional Institution,
Pittsburgh, Pennsylvania.

No. 74–1345.

United States Court of Appeals,
Third Circuit.

Final Submission Dec. 16, 1974.

Decided Feb. 5, 1975.

Joseph N. Bongiovanni, III, Speese & Kephart, Philadelphia, Pa., for appellant.

John J. Hickton, Dist. Atty. of Allegheny County, John M. Tighe, First Asst. Dist. Atty., Robert L. Eberhardt, Robert L. Campbell, J. Kent Culley, Asst. Dist. Attys., Pittsburgh, Pa., for appellee.

Before BIGGS, ADAMS and GARTH, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

This is an appeal from the district court's dismissal without a hearing of the relator-appellant's, Geisler's, application for habeas corpus. The district court ruled that Geisler had failed to exhaust his state remedies. The instant appeal followed. Its disposition requires our examination of the complicated history of Geisler's various motions and petitions and a determination of whether he has either exhausted his state remedies or been victimized by circumstances rendering those remedies ineffective. 28 U.S.C. § 2254(b).

## I. FACTUAL BACKGROUND

Geisler was tried by a jury on October 19, 1962 for armed robbery and violation of the Uniform Firearms Act.[1] His trial was conducted by Judge Robert Morris of the Pennsylvania Court of Common Pleas. Geisler was found guilty on both counts, and his counsel filed a motion for a new trial but subsequently withdrew it. On February 15, 1963, Geisler was sentenced to a term of 7½ to 15 years. At a hearing on March 3, 1963, his counsel requested leave to argue the original motion for a new trial. Leave was denied.

In 1964, Geisler filed a petition for habeas corpus in the state court.[2] Judge Morris dismissed that petition without a hearing on October 6, 1964 because it raised issues which he deemed were not properly before him in a habeas corpus proceeding. On appeal, the Pennsylvania Superior Court affirmed *per curiam.* Commonwealth ex rel. Geisler v. Maroney, 205 Pa.Super. 739, 209 A.2d 437

---

[1]. Geisler had been indicted at No. 3 October Sessions, 1962 in the Criminal Courts of Allegheny County on counts of armed robbery (formerly, 18 P.S. § 4705; now, 18 C.P.S. §§ 3701 and 6103) and receiving stolen goods (formerly, 18 P.S. § 4817; now, 18 C.P.S. § 3925). Geisler was also indicted at No. 14 October Sessions, 1962 on a count of violation of that portion of the Uniform Firearms Act which prohibits former convicts from owning or possessing firearms (formerly, 18 P.S. § 4628(d); now, 18 C.P.S. § 6105). He and his co-defendant Wilbert Kastle were tried and convicted solely on the armed robbery and firearms violation counts.

[2]. The issues raised by this habeas corpus petition were as follows: (1) ineffective assistance of counsel; (2) trial court erred in permitting evidence as to prior convictions; (3) prejudicial and unrelated evidence; (4) arrest without probable cause; (5) trial judge's instructions denied fair trial; and (6) prosecutorial misconduct.

Judge Morris' order was as follows:
"And Now, October 6, 1964, the within petition for writ of habeas corpus is ordered filed, filing fee to be paid by Allegheny County. Inasmuch as the petition sets forth no complaints which can properly be considered under a petition for writ of habeas corpus, the petition is hereby dismissed."

(1965). The Pennsylvania Supreme Court denied allocatur on August 30, 1965.

Geisler then filed a *pro se* petition pursuant to the Pennsylvania Post Conviction Hearing Act, 19 P.S. § 1180–1 et seq., on October 23, 1967.[3] On March 7, 1968 Judge Morris conducted a hearing on the petition, having appointed the Allegheny County Public Defender as counsel for Geisler. The issue was stated to be whether Geisler had been deprived of his right to appeal. On March 4, 1969, Judge Morris filed an opinion and order dismissing the PCHA petition but permitting Geisler to file a motion for a new trial nunc pro tunc. The Public Defender again served as counsel for Geisler. On June 27, 1969, Geisler filed *pro se* a motion for a new trial, as follows: (1) he was denied effective assistance of counsel; (2) the identification was so impermissibly suggestive as to be constitutionally infirm; (3) the trial court erred in permitting introduction into evidence of the appellant's prior record of convictions under the Uniform Firearms Act; (4) the admission of prejudicial and unrelated evidence was improper; (5) his arrest was without probable cause; (6) the Assistant District Attorney engaged in prosecutorial misconduct; (7) the trial judge's charge to the jury denied Geisler a fair trial; and (8) the jury's double verdict resulted in double jeopardy to the appellant.

On December 17, 1969, six months after the motion for new trial was filed, a court consisting of Judge Morris and Judge Samuel J. Feigus heard oral argument on the motion and took it under advisement. On April 27, 1970, ten months after Geisler filed his motion of June 27, 1969 for a new trial, and again on July 16, 1970, thirteen months after

the filing of his motion for a new trial on June 27, 1969, Geisler filed petitions for disposition of his motion for a new trial. These petitions were identical, the second having been filed because the first did not reach the clerk's office. In substance, they were a procedural request that Judge Morris act immediately on the motion for a new trial and not a substantive enumeration of Geisler's claims. While appellant specifically elaborated upon several contentions, including denial of effective assistance of counsel and prejudice arising from introduction into evidence of appellant's prior record, the petition also referred to appellant's motion for a new trial and the oral argument on that motion.

On September 11, 1970, fifteen months after Geisler had filed his motion for a new trial, Judge Morris filed the following opinion and order:

"This matter is before the Court on a Petition which the Defendant describes as a 'Petition for Disposition and Remedy as a Matter of Law, a New Trial.'

"Upon a careful review of the Petition *in the light of the petitions heretofore filed, hearing held, Orders made by this Court as well as the Superior Court, we can see nothing in the Petition of a meritorious nature.*

"On March 4, 1969, this Court filed its Opinion and Order granting to the Defendant the right to file a motion for new trial, nunc pro tunc. This Order was made as a result of a Post Conviction Petition filed by the Defendant alleging previously that he had been improperly denied his right of appeal. After hearing and testimony taken the Order granting him the right to appeal was made. For reasons known only to the defendant, no action was taken by

---

**3.** The issues raised by the Pennsylvania Post Conviction Hearing Act petition were as follows: (1) ineffective assistance of counsel; (2) introduction into evidence of prejudicial and unrelated evidence; (3) identification; (4) arrest without probable cause; (5) denial of right to appeal; (6) use of prior criminal record; (7) prosecutorial misconduct; and (8) trial judge's jury charge was erroneous.

Judge Morris' order of March 4, 1969 stated in part:

"[T]he Defendant-Petitioner is hereby granted the right to file a Motion for a New Trial, nunc pro tunc."

the defendant to perfect such appeal. We refer to our Opinion and Order of March 4, 1969, wherein we review the case from its inception. *We see no merit to Defendant's allegations.* Accordingly, we make the following ORDER. AND NOW, September 11, 1970, for the reasons stated above the prayer of the Petition is denied and the Petition is dismissed" (emphasis added).

The foregoing opinion of the learned Pennsylvania trial judge is not entirely clear, but his order is clear enough for he states that "the prayer of the Petition is denied and the Petition is dismissed." It would appear to us that, whatever may have been in the mind of Judge Morris, the order of September 11, 1970 was an appealable final order.

■ Geisler appealed this decision to the Pennsylvania Superior Court, which granted him leave to file a brief *pro se* in addition to the brief which the Public Defender filed in his behalf. The Public Defender's brief dealt only with the identification issue. Geisler's *pro se* brief raised all the issues which had been contained in the motion for a new trial. It argued as well that appellant had been denied a fair trial and effective assistance of counsel at all proceedings subsequent to trial. On June 30, 1971, the Superior Court affirmed the judgment of sentence *per curiam.* Commonwealth v. Geisler, 218 Pa.Super. 911, 279 A.2d 198 (1971). Both appellant and the

Public Defender then petitioned for allocatur to the Supreme Court of Pennsylvania. Geisler's petition contained all eight issues raised in the motion for a new trial. Those petitions were denied *per curiam* on January 14, 1972.[4]

Geisler then turned to the federal courts for relief and filed a petition for habeas corpus on March 20, 1972 in the United States District Court for the Western District of Pennsylvania.[5] The Honorable Joseph Weis, then a district court judge, conducted a hearing on August 28, 1972 to determine whether an evidentiary hearing should be held on the petition. Judge Weis concluded that the exhaustion requirement had not been met. Possibly confusion arose from the fact that Geisler filed two petitions for disposition of his motion for a new trial. The learned district judge apparently took the view that Geisler's motion for a new trial had not been disposed of on the merits by Judge Morris and that the Court of Common Pleas had disposed only of the petitions asking disposition of his motion for a new trial. Regardless of the basis for this decision, Judge Weis, having concluded that Judge Morris' order and opinion of September 11, 1970 were *not* a disposition of Geisler's motion for a new trial, advised President Judge Ellenbogen of the Allegheny County Court of Common Pleas of this discovery by letter on August 30, 1972 and requested that his court formally dispose of the motion. On October 24,

---

4. Copies of the briefs and petitions filed in these appeals to the Superior and Supreme Courts of Pennsylvania were not in the record before us, a record which, as is too frequently the case in habeas corpus proceedings, is woefully lacking in this and other respects. However, copies of the briefs and petitions to these courts in the aforementioned appeals have been procured, and this court will order them to be included in and made part of the record before us so that the Reviewing Court may have a full and proper record before it. We, of course, take judicial notice of these documents, as the United States District Court could have done. See Doe v. Wohlgemuth, 505 F.2d 186 (3d Cir. 1974), note 5 at 188, citing *inter alia,* Funk v. Commissioner of Internal Revenue, 163 F.2d 796 (3d Cir. 1947), and Zahn v. Transamerica Corporation,

162 F.2d 36 (3d Cir. 1947). Cf. Rule 44(b), F.R.Civ.Proc., and Rule 10(e), F.R.App.Proc., 28 U.S.C.

5. Geisler's prolix petition consists of 26 typewritten pages, with numerous appendices. This petition asserts ten "grounds" for relief. These grounds when boiled down to their essence, and giving to Geisler's pleading every advantage to be granted a *pro se* petition under Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), present the same bases for relief, and none other, as were asserted in Geisler's motion for new trial and in the aforementioned appeals' briefs and petitions filed with the Pennsylvania Superior and Supreme Courts after Judge Morris' order of September 11, 1970.

1972 Judge Morris formally denied the appellant's motion for a new trial. On October 26, 1972, Judge Weis dismissed Geisler's federal habeas corpus petition for failure to exhaust state remedies. The United States District Court denied appellant's motion for reconsideration, and this court denied a certificate of probable cause on March 1, 1973 (C.A. Misc. Rec. No. 72–8114). We cannot agree with Judge Weis' conclusion that Judge Morris' decision and order of September 11, 1970 were not a sufficient disposition of Geisler's claims for the purpose of exhaustion of state remedies.

It should be observed that three years and four months passed before the post trial motion was "formally" disposed of by the Court of Common Pleas, viz., the period from June 27, 1969 to October 24, 1972. Nor perhaps would disposition have been made even on this late date had it not been for the letter of Judge Weis to Judge Ellenbogen.

Geisler next moved to appeal Judge Morris' order of October 24, 1972 in the Pennsylvania Superior Court.[6] In a *per curiam* affirmance of that judgment the Superior Court on September 19, 1973 denied appellant's application for the third time.[7] Commonwealth v. Geisler, 226 Pa.Super. 722, 309 A.2d 817 (1973).

Then occurred what we deem to be a curious circumstance. In the first federal habeas corpus proceeding, that of March 20, 1972, a United States Magistrate appointed as counsel for Geisler a member of the bar of Allegheny County. Counsel continued to advise appellant after the case returned to the state tribunals and, when the Superior Court rejected Geisler's appeal on September 19, 1973, wrote Geisler that he had exhausted his state remedies and that he could now file his "Federal Court Petition for Writ of Habeas Corpus". The substance of the letter is set out in the footnote.[8] At this point, Geisler, as would be expected, apparently abandoned the thought of any appeal to the Supreme Court of Pennsylvania. In view of the great vigor with which Geisler sought relief from his judgments of conviction, we think he would have applied for allocatur, probably *pro se*, and if allocatur had been denied, there could be no question but that he would have exhausted his state remedies. Geisler foreclosed himself from this course, however, probably because of the advice of counsel.

Geisler then filed a second petition for federal habeas corpus[9] and this was referred to Judge Snyder, who rejected it on the ground that Geisler had not exhausted his state remedies. It is this

6. On this appeal, appellant again raised the eight issues enumerated, supra. In addition, he contended that the three and a half year delay in ruling on his motion for new trial was a deprivation of due process and equal protection of the laws. The briefs filed in this appeal are not in the record before us. We have, however, gleaned the foregoing from the brief which appellee filed with us, and under these circumstances we treat this uncontradicted statement as an admission.

7. Appellant alleges, and we find it noteworthy, that on March 27, 1973 during the pendency of this appeal before the Superior Court, the Commonwealth filed a "Petition to Dismiss Due to Prior Appellate Review of Issues." In effect, such a petition is an admission that the Superior Court's decision of June 30, 1971 was an adequate review of the contentions raised in Geisler's post-trial motion. The issue of whether appellant has exhausted his state remedies would, then, turn solely on the content of the allocatur petitions

rejected by the Pennsylvania Supreme Court on January 14, 1972.

8. "Please find enclosed the opinion of the Superior Court affirming your judgment of sentence. I now suggest that if you carry this matter further, that you can file your Federal Court Petition for Writ of Habeas Corpus *as you have now exhausted the state remedies*." (Emphasis added.)

9. The "*Issues and Grounds*" presented in this petition are substantially the same as those which were before the United States District Court in Geisler's first petition for federal habeas corpus, save two which were added, as follows:

"The district court executed fundamental error in sending petitioner back through the courts of the State, by letter and suggestive belief that the State court would remedy the flagrant abuses of a totality tainted trial, judgment and appeal, without competent counsel, which, subjected him to: a three-year delayed

denial of habeas corpus which is before us on this appeal.

## II. THE LAW AND THE DISPOSITION OF THIS CASE

■ (A)(1) Geisler has exhausted his state remedies. He filed a petition for state habeas corpus. This was refused. On appeal to the Superior Court the judgment was affirmed and allocatur was denied by the Supreme Court. He also filed a petition under the PCHA and Judge Morris, while on the record denying the relief sought, nonetheless granted it in substance by giving Geisler leave to file a motion for a new trial nunc pro tunc. In our view it is not necessary that he again make use of the provisions of the PCHA or raise these same issues again on collateral attack.[10] "[T]he Supreme Court made clear in Brown v. Allen that the exhaustion doctrine is not intended to give the states more than one full chance." Developments in the Law—Federal Habeas Corpus, 83 Harv. L.Rev. 1038 at 1096 (1970) (footnote omitted).

■ We cannot agree with our Brother Weis or with Judge Snyder that Judge Morris' order of September 11, 1970, the affirmance of that judgment by the Superior Court, and the denial of allocatur by the state Supreme Court[11] did not exhaust Geisler's state remedies. As we have stated earlier, Geisler's *pro se* motion for a new trial and his appeals' briefs embraced identical issues. They likewise included all issues raised previously in the state habeas corpus

proceedings and all issues, save that of denial of the right to appeal, raised in the PCHA proceeding. More importantly, those same issues have been raised in both federal habeas corpus petitions. Geisler's petitions and briefs are inartistic and do not fit exactly or with clockwork precision into the Pennsylvania state court procedures, but since he was acting *pro se*, they were sufficiently adapted to their purpose to put the Superior Court and Supreme Court of Pennsylvania on notice as to the issues raised and the relief sought. See United States ex rel. Turner v. Rundle, supra; United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied 399 U.S. 912, 90 S.Ct. 2206, 26 L.Ed.2d 566 (1970).

■■ We deem it imperative to note that the exhaustion doctrine does not require that the state courts have actually ruled on the merits of the claims, but merely that they have had those contentions presented to them. See Brown v. Allen, supra, 344 U.S. at 448–449, note 3, 73 S.Ct. 397; United States ex rel. Turner v. Rundle, supra, 438 F.2d at 845; Ralls v. Manson, 375 F.Supp. 1271 (D.Conn.1974). In this regard, the decision as to whether exhaustion has occurred should be based on the record and pleading before the state courts not the length of their opinions. United States v. Pate, 240 F.Supp. 696, 704 (N.D.Ill. 1965). See also Sokol, Federal Habeas Corpus, § 22.2 (2d ed. 1969). While the case before us is most certainly *sui gen-*

---

opinion from without jurisdiction and without trial record, on one paragraph opinion and repeat issues on appeal and affirmed on appeal on the previously affirmed appeal."

"Where petitioner has proceeded to the only appellate court wherein his legal and rightful appeal is mandated, has he not exhausted state remedies? And/or is graceful allowance of appeal to the Supreme Court mandatory?"

We need not concern ourselves with these two claims in respect to any issue of exhaustion of remedies since their contents cannot be considered in an on-the-merits adjudication of appellant's petition. In fact, they consist of incoherent legal jargon.

For purposes of identification and clarity, we state that the first federal petition for

habeas corpus is numbered Civil No. 72–234 and the second federal petition for habeas corpus is numbered Civil No. 73–1034.

10. Brown v. Allen, 344 U.S. 443 at 447, 73 S.Ct. 397, 97 L.Ed. 469 (1953); United States ex rel. Schultz v. Brierley, 449 F.2d 1286, 1287 (3d Cir. 1971); Osborn v. Russell, 434 F.2d 650, 651 (3d Cir. 1970).

11. A denial of allocatur, as here, or a similar refusal to entertain an appeal constitutes a sufficient presentation for purposes of exhaustion. United States ex rel. Turner v. Rundle, 438 F.2d 839, 845 (3d Cir. 1971) (denial of allocatur by the Pennsylvania Supreme Court).

*eris,* we emphasize that "[i]t is the legal issues that are to be exhausted, not the petitioner." Park v. Thompson, 356 F.Supp. 783, 788 (D.Haw.1973).

■ (2) If we assume that our Brother Weis' position is correct as to the "formal" disposition of Geisler's motion for a new trial, we are confronted with a further dilemma. The motion for a new trial was filed on June 27, 1969 and was not "formally" disposed of by Judge Morris until October 24, 1972, a period of three years and four months. We hesitate to repeat the ancient statement that justice delayed is justice denied, but there can be no doubt that such an inordinate delay is an adequate basis for federal habeas corpus relief even though state remedies have not been exhausted. See, e. g., United States ex rel. Senk v. Brierley, 471 F.2d 657, 660 (3d Cir. 1973); Tramel v. Idaho, 459 F.2d 57, 58 (10th Cir. 1972); Ralls v. Manson, supra, 375 F.Supp. at 1282;[12] Phillips v. Tollett, 330 F.Supp. 776, 778 (E.D.Tenn.1971).

■ (B) As we have pointed out, counsel appointed for Geisler at the time of the first federal habeas corpus proceeding by the United States Magistrate was unaware of what constituted exhaustion of state remedies and expressly informed Geisler that he did not need to apply for allocatur to the Supreme Court of Pennsylvania after the Superior Court had affirmed the decision of the Court of Common Pleas of Allegheny County. This court has taken the position that effective representation is to be judged by a standard of normal and reasonable competency as suggested in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). See the cases cited in Case Note, 43 Fordham L.Rev. 310 at 313–315 (1974).

Assuming, however, that the position taken by the learned district judges, *i. e.,* to the effect that Judge Morris' order of September 11, 1970 was insufficient, we conclude that Geisler is entitled to have his petition heard because of the provisions of 28 U.S.C. § 2254(b), which state that habeas is available if there exists "circumstances rendering . . . [State corrective] process ineffective . . .".

### III. CUSTODY FOR THE PURPOSE OF FEDERAL HABEAS CORPUS

■ One point remains for disposition, but as we read the Government's position, it is not really contested. The record indicates that appellant is presently on "furlough" from the State Correctional Institution at Pittsburgh. The restraints upon Geisler's freedom, however, constitute "custody" within the terms of 28 U.S.C. §§ 2241(c), 2254(a) for

**12.** Ralls v. Manson, supra, 375 F.Supp. at 1282: "The three and one-half year period during which the direct appeal in the instant case has been pending, although somewhat longer than the average, is by no means unique among Connecticut cases. Nevertheless, this delay in adjudicating the petitioner's rights is clearly inordinate and excessive: it certainly offends the 'limits to the sacrifices men must make upon the altar of comity.' United States ex rel. Lusterino v. Dros [D.C. N.Y.], *supra,* 260 F.Supp. [13] at 16. As the United States Supreme Court declared in Bartone v. United States, 375 U.S. 52, 54, 84 S.Ct. 21, 22, 11 L.Ed.2d 11 (1963), 'Where state procedural snarls or obstacles preclude an effective state remedy against unconstitutional convictions, federal courts have no other choice but to grant relief in the collateral proceedings.' Cf. Hunt v. Warden, Maryland Penitentiary, 335 F.2d 936, 940–941 (4th Cir. 1964)." The Supreme Court of Delaware in Erb v. Delaware, 332 A.2d 137 (1974) expresses a strong view in respect to delayed juridical actions. The Court said this in respect to delays of counsel:

"The Court docket . . . chronicles appalling and unnecessary delay in prosecution of the appeals resulting from a lack of coordination between trial counsel and the Public Defender and the failure of both of them to meet their responsibilities as counsel of record. Trial counsel did not order a transcript of testimony nor provide the Public Defender with pertinent information as to errors of law on which the appeals are based, and the Public Defender did not meet his responsibility to prosecute the appeals with diligence. The delay of some thirteen months without a transcript, without an order for transcript and without a meaningful brief is simply unconscionable." (footnote omitted).

the purposes of federal habeas corpus jurisdiction.[13]

## IV. CONCLUSION

The judgment will be reversed and the case remanded. All issues save that of exhaustion of state remedies remain open for disposition by the district court.

---

13.   See Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973).   See also Sokol, supra, at § 6.1.