UNITED STATES of America ex rel. James T. CUNNINGHAM

v.

Julius T. CUYLER, Superintendent, State Correctional Institution, Graterford, Pennsylvania, et al.

Civ. A. No. 79–2380.

United States District Court, E. D. Pennsylvania.

Oct. 31, 1979.

James T. Cunningham, pro se.

Cynthia H. Severinsen, Asst. Dist. Atty. for District Attorney of Philadelphia, Philadelphia, Pa., for defendants.

## OPINION

JOHN MORGAN DAVIS, Senior District Judge.

### PRELIMINARY STATEMENT

In April, 1977, following a court trial without a jury, James Cunningham was found guilty of (1) knowingly and intentionally possessing a controlled substance and (2) manufacture, delivery or possession with intent to manufacture or deliver a controlled substance. Subsequently, Mr. Cunningham was sentenced to serve a term of two to ten years imprisonment. On direct appeal, the Superior Court of Pennsylvania affirmed *per curiam* the judgment of sentence. Thereafter, the Supreme Court of Pennsylvania denied relator's petition for leave to appeal.

Since Mr. Cunningham's conviction and appeal, relator has filed a total of three petitions under Pennsylvania's Post-Conviction Hearing Act, 19 P.S. § 1180–1 *et seq.* The third of these petitions, filed June 25, 1979, is still pending in the Pennsylvania state courts.

On June 28, 1979, less than one week after the filing of his third P.C.H.A. petition, relator filed a federal petition for habeas corpus relief alleging claims identical to those raised in his currently pending state P.C.H.A. petition. Relator alleges the following claims [1] in his petition for writ of habeas corpus:

(1) that he was illegally and unlawfully incarcerated in the State Correctional Institution following his conviction;

(2) that he was deprived of procedural due process in violation of the law when the trial court failed to review properly his claims through post-trial motions; and

(3) that counsel was ineffective for a number (eleven) of reasons.

This Court, upon receipt of the federal habeas corpus petition, referred the matter to Magistrate Edwin Naythons for a preliminary review. Magistrate Naythons' Report and Recommendation determined that all but one of relator's claims were without merit. An independent review of the entire record has convinced the Court that Magis-

---

1. These claims are more fully discussed in Magistrate Edwin Naythons' Report and Recommendation, appended hereto.

trate Naythons' ultimate conclusion is correct and that the writ should not be granted. Therefore, the Court adopts Magistrate Naythons' Recommendation and those parts of his Report that are consistent with the discussion that follows.

## EXHAUSTION OF STATE REMEDIES

Generally, a federal court will only consider a petition for habeas corpus when it appears that "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254 (Supp. 1977); *U.S. ex rel. Herwegh v. Commonwealth of Pennsylvania*, 423 F.2d 1203 (3d Cir. 1970); *U.S. ex rel. Bower v. Banmiller*, 232 F.Supp. 627, 629 (E.D.Pa.1964). This principle, which has been codified into the federal law, is generally known as the "exhaustion doctrine" and an examination of the reasoning behind it serves to show the prudency of this Court's adherence to it.

 It is well established that "the purpose of the exhaustion doctrine is to permit the state courts to correct any errors which may have crept into their criminal process without interference from outside sources." *U.S. ex rel. Laughlin v. Russell*, 282 F.Supp. 106 (E.D.Pa.1968). The Supreme Court in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), has explained the history and purpose of this doctrine:

> [I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation . . . . Solution was found in the doctrine of comity between courts, a doctrine which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter. *Darr*

*v. Burford*, 339 U.S. 200, 204 [,70 S.Ct. 587, 590, 94 L.Ed. 761]. The rule of exhaustion "is not one defining power but one which relates to the appropriate exercise of power." *Bowen v. Johnston*, 306 U.S. 19, 27 [, 59 S.Ct. 442, 446, 83 L.Ed. 455]. *Fay v. Noia, supra*, at 419–20, 83 S.Ct. at 839.

Thus, for the reasons that appear below, this Court may not and will not decide the merits of relator's petition on issues which have not been exhausted at the state court level.[2]

## PENDENCY OF P.C.H.A. ACTION

The Third Circuit in *U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762 (3d Cir. 1978), held that state prisoners who have perfected their state court appeals have thereby exhausted their state court remedies and do *not* need to file a P.C.H.A. petition in order to seek federal habeas corpus relief. *See also, U.S. ex rel. Geisler v. Walters*, 510 F.2d 887 (3d Cir. 1975) (federal habeas corpus allowed where P.C.H.A. petition was filed but denied); *U.S. ex rel. Schultz v. Brierley*, 449 F.2d 1286 (3d Cir. 1971) (federal habeas corpus available where P.C.H.A. was not filed at all). The implication which arises from these holdings it that a Pennsylvania prisoner need not file a P.C.H.A. petition in order to seek federal habeas corpus relief.

However, the case *sub judice*, presents an issue at variance from those previously considered by the Third Circuit in similar cases. In previous Third Circuit cases, the relator in each case either filed a P.C.H.A. petition prior to his filing of a federal habeas corpus petition and the P.C.H.A. petition was decided by the state court prior to the filing of the federal petition, *U.S. ex rel. Geisler v. Walters, supra*; or the relator *never* filed a P.C.H.A. petition at all and therefore the state court had not decided the issues raised. *U.S. ex rel. Schultz v. Brierley, supra*. The distinguishing factor in the present case is that relator has filed a P.C.

---

**2.** As Magistrate Naythons points out in his Report, one of the issues raised by relator was raised in the state court appeals and thus has been exhausted. This issue has been discussed by Magistrate Naythons and found to be with-

out merit. I conclude that Magistrate Naythons was correct and adopt his decision on this issue. *See,* Report and Recommendation at pp. 4–7.

H.A. petition which was *not* disposed of by the state court. This petition if still pending in state court. That petition raises issues identical to those raised in relator's concurrent federal habeas corpus petition. The issue raised is clearly different from the issues presented in previously decided cases and thus involves different considerations in its resolution.

 Thus, the legal determination facing the Court would appear to be one of first impression in this Circuit. The critical issue facing the Court is not whether the filing of a P.C.H.A. claim is necessary to a finding of exhaustion of state court remedies, but, whether the *PENDENCY* of such a petition acts as a bar to finding exhaustion of state court remedies, thereby resulting in the denial of availability of federal habeas corpus relief.

To reemphasize, the purpose of the exhaustion doctrine is to enable state courts to correct any mistakes which may have occurred in the state criminal process. Thus, it seems clear to the Court, that this case is a clear illustration of an appropriate application of the prudential considerations that are the very core of the doctrinal makeup.

Relator has raised issues currently pending in the state court that are identical to those raised in the current habeas corpus petition. If the Court were to grant the petition, it would be impinging on "the doctrine of comity between courts" and would fail to allow the Pennsylvania courts "already cognizant of the litigation, . . . to pass upon the matter." *Fay v. Noia*, 372 U.S. at 420, 83 S.Ct. at 839. In other words, were the Court to decide the issues raised here, issues identical to those raised concurrently in the state court, it would be interfering with the process of allowing the state to correct any possible mistakes which may have crept into its judicial process. *U. S. ex rel. Laughlin v. Russell*, 282 F.Supp. 106 (E.D.Pa.1968).

Therefore, as a result of realtor's pending state P.C.H.A. petition, one which raises issues identical to those raised in his federal habeas corpus petition and which the state court has not had the opportunity to resolve, the Court holds that relator's petition for habeas corpus relief is *DENIED*.

## REPORT—RECOMMENDATION

September 14, 1979.

EDWIN E. NAYTHONS, United States Magistrate.

Relator, a state prisoner, is presently incarcerated at the State Correctional Institution in Graterford, Pennsylvania. James T. Cunningham was arrested on October 28, 1976. On that day, Philadelphia Policeman William Perkis obtained a search warrant for relator's house and during the search he uncovered, *inter alia*, thirteen bundles, totalling 299 glazed packets, containing heroin (N.T. 8, 16). Relator was charged with knowingly and intentionally possessing a controlled substance and manufacture, delivery or possession with intent to manufacture or deliver a controlled substance as of Information No. 206, January Sessions, 1977. At the preliminary arraignment on October 29, 1976, bail was set at $5,000 which was posted on November 4, 1976. On December 13, 1976, relator was arrested and detained by the Pennsylvania Board of Parole and Probation pending disposition of the above charges. A preliminary hearing was held on December 29, 1976, before the Honorable Lynn Abraham, of the Philadelphia Municipal Court, after which relator was held for court. Motions to suppress physical evidence were denied by the Honorable Francis A. Biunno on March 25, 1977. Relator was tried without a jury before the Honorable Charles A. Lord on April 7, 1977, and was found guilty on both charges. On May 19, 1977 James T. Cunningham was sentenced and is currently serving a term of two to ten (2–10) years imprisonment. A direct appeal was then taken to the Superior Court of Pennsylvania which affirmed the judgment of sentence *per curiam* on March 9, 1979. Following the Superior Court's action, relator filed a petition for allowance of appeal in the Supreme Court of Pennsylvania on March 30, 1979, which was denied on June 15, 1979.

Relator filed a *pro se* petition under the Post-Conviction Hearing Act, 19 P.S. § 1180–1 *et seq.*, on June 25, 1979. This is his third PCHA petition dating back to August 25, 1977. The allegations in this petition are identical to those raised in the instant federal petition for writ of habeas corpus. No action has yet been taken on relator's third PCHA petition.

Relator's instant petition for writ of habeas corpus was filed on June 28, 1979, which was subsequently amended on July 18, 1979 and August 14, 1979. Additionally, on August 3, 1979, relator filed in the federal district court a "petition for bail pending appeal to the United States Supreme Court."

In his present petition for federal habeas corpus relief relator alleges he was illegally and unlawfully incarcerated in the State Correctional Institution following his conviction; that he was deprived of procedural due process in violation of the law when the trial court failed to properly review his claims through post-trial motions, and counsel was ineffective for a number (eleven) of reasons.

## DISCUSSION

### I

It is at once clear that due to the pendency of relator's June 25, 1979 PCHA petition, relator has failed to exhaust his state remedies. The "exhaustion doctrine", simply stated, is that a habeas applicant before being entitled to federal relief must first pursue those remedies still open to him at the time he files his petition in the federal court. *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Only if the state courts have had the first opportunity to hear the claims sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies.

Accordingly, the courts have required a state prisoner to present the state courts with the same claim he urges upon the federal court. *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438.

The Third Circuit Court of Appeals has further ruled that this requirement is to be strictly followed. *Zicarelli v. Gray*, 543 F.2d 466 (3rd Cir. 1976); *United States ex rel. Trantino v. Hatrack*, 563 F.2d 86 (3rd Cir. 1977). Thus, all but one of relator's claims are not cognizable. As mentioned, all of the claims now raised are presently before the state court system under the State Post-Conviction Hearing Act, 19 P.S. § 1180–1 *et seq.*, which is the proper remedy. *United States ex rel. Bowen v. Mazurkiewicz*, 315 F.Supp. 789 (E.D.Pa.1970).

It must be noted that relator did in fact exhaust his state remedies concerning one issue by appealing it to the Superior Court and seeking review by the Supreme Court. The issue is that of the reliability of the informant. It is at once clear that relator improperly framed this issue in terms of ineffective assistance of counsel for failing to preserve this issue. The issue was not waived.

Nonetheless, the merits of this argument do not warrant relief. The affidavit for the warrant to search relator's home contained ample facts from which the issuing authority properly concluded that the informant was reliable and that his information was based on personal observations (See Appendix).

The leading case concerning the reliability test is *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) which mentioned four factors to be considered in determining whether there is a substantial basis for crediting the hearsay contained in the affidavit:

(1) Did the informant give prior reliable information?

(2) Was the informant's story corroborated by any other source?

(3) Were the informant's statements a declaration against interest?

(4) Does the relator's reputation support the informant's tip?

In the present case, the informant gave prior reliable information; the informant's story was corroborated by surveillance of the premises in question and by the dis-

covery that one of the persons seen leaving relator's house had heroin in his possession, see *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Commonwealth v. Monte*, 459 Pa. 495 (1974); and relator's reputation from his record of past arrests for heroin possession at the house to be searched supported the informant's tip.

Informant's reliability was established by his past performance of providing, within the previous seven months, information leading to arrests in four incidents of narcotic violations. The arrestees were all held for court action and in two of the cases convictions were obtained. This information is contained in the search warrant affidavit. Further, a suppression hearing in camera was held, during which Officer Perkis disclosed the names of those arrested and convicted in the four incidents (N.T. S.H. In Camera 2–8). Thus, relator had a full opportunity to test the affiant's veracity. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

■ The informant advised the affiant that during the four days prior to the date he gave the information to Officer Perkis, he had been inside 2241 Greenwich Street several times in the later afternoon hours, and that while there, he saw relator sell small glazed paper packets containing a white and tan powder, which relator said at the time was good heroin, to the unknown white males for $6.00 each, the most recent being the same day, October 27, 1976. The informant advised Officer Perkis that these white males opened the packets, poured the contents onto a spoon and mixed it with water, then used a syringe to inject this liquid into their arms. They would then get dizzy and say, "It's good scagg." Thus, the basis for the informant's conclusion that relator was dealing in heroin was amply set forth.

Further, the details recounted by this informant were verified by the affiant's own surveillance. See *Draper v. United States*, supra the same day, October 27, 1976, he received this information, Officer Perkis took up surveillance of 2241 Greenwich Street from 7:00 to 11:00 p. m. (N.T.S.H. 36). He observed six males enter the premises, stay a few minutes and leave (N.T.S.H. 38). One of them, as he left the house, walked in the direction of Officer Perkis' surveillance vehicle when he saw Officer Perkis, he dropped two glazed paper packets containing a white and tan powder (N.T. S.H. 39). This male was arrested and charged with possession of a controlled substance (heroin). Another male leaving the house was recognized as a drug user, having been arrested numerous times for narcotics. Officer Perkis' check of police files disclosed that James Cunningham, whose address was at the premises in question, had previous narcotic arrests inside the premises, the most recent being August 21, 1975 (N.T. S.H. 45). The affidavit thus clearly disclosed facts sufficient to enable the issuing authority to determine that the affiant's belief that his informant was credible and the information reliable had a reasonable basis.

## II

Another issue must be addressed, that is the issue of whether relator, by filing a federal habeas corpus and deliberately by-passing his state remedies, is forever barred from raising his contentions again in a federal court by way of habeas corpus. A deliberate by-pass is a judicially-created doctrine in the nature of a forfeiture. As the forfeiture of the opportunity to assert federal, constitutional rights in a federal court is a somewhat drastic step, the criteria for determining such a deliberate by-pass are very strict. In order for a federal court to find a relator precluded from federal habeas corpus for this reason, deliberate by-pass would, at the minimum be done after the relator has received the advice of counsel. The Supreme Court was very careful in the way it set forth the test:

"If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other

reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. *Cf. Price v. Johnston*, 334 U.S. 266, 291, [68 S.Ct. 1049, 1063, 92 L.Ed. 1356]. At all events we wish it clearly understood that the standard here put forth depends upon the considered choice of the petitioner. *Cf. Carnley v. Cochran*, 369 U.S. 506, 513–517, [82 S.Ct. 884, 888–891, 8 L.Ed.2d 70;] *Moore v. Michigan*, 355 U.S. 155, 162–165, [78 S.Ct. 191, 195–197, 2 L.Ed.2d 167.] A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question. *E. g. Rice v. Olson*, 324 U.S. 786, [65 S.Ct. 989, 89 L.Ed. 1367.]" (Footnote omitted.) *Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963). [Emphasis added.]

From the above passage it can be seen that it is exceedingly difficult for a state prisoner to be barred from federal habeas corpus on a theory of waiver or deliberate by-passing. Relator's case does not meet the strict requirements the Supreme Court set forth and therefore he cannot be barred from federal habeas corpus on a theory of waiver.

Thus, relator is barred from federal habeas corpus only for a failure to exhaust state remedies. While exceptional circumstances may justify a waiver of the rule requiring relator to pursue and exhaust state remedies, *United States ex rel. Washington v. Cavell*, 251 F.Supp. 779 (M.D.Pa.1966), no such circumstances appear in the instant petition to excuse relator's failure to await the determination of his current PCHA petition.

In a case of this sort, it would be singularly inappropriate for a federal court to interpose its hand unless it is clear that *all* of the state courts had considered and rejected the challenge or that *all* effective avenues were closed. The strong considerations of comity require giving a state court system the first opportunity to correct its own errors. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

Accordingly, this United States Magistrate makes the following:

## RECOMMENDATION

Now, this 13th day of September, 1979, IT IS RESPECTFULLY RECOMMENDED that the petition for a writ of habeas corpus be Denied without prejudice for failure to exhaust state remedies. There is no probable cause for appeal.